## GATHRIGHT v. CARL MARKLEY MOTOR CO.

### No. 3743.

Court of Civil Appeals of Texas. Beaumont.

Nov. 21, 1940.

Thos. J. Hightower and Thos. A. Wheat, both of Liberty, for appellant.

Horace Grogan, of Liberty, and Orgain, Carroll & Bell, of Beaumont, for appellee.

O'QUINN, Justice.

This suit arose out of an automobile collision occurring near the town of Devers in Liberty County, Texas, September 28, 1939. A 1939 V-8 Ford automobile owned by appellee, Carl Markley Motor Company, and driven by Willie Fowler, collided with an automobile driven by appellant, Gathright, resulting in serious bodily injuries to appellant. Among other things, appellant alleged that Willie Fowler, the driver of appellee's car, was the agent, servant and employe of appellee, Carl Markley Motor Company, and was then and there acting within the scope of his employment, and that said driver of said car was guilty of negligence causing the collision resulting in the injuries to appellant, in that said driver was driving at an excessive rate of speed, forty-five miles per hour and on the left side of the highway, which negligence was a proximate cause of the collision, and of the injuries received by appellant. Appellee answered by general demurrer, general denial, plea of contributory negligence, and specially denied that the driver of the Ford V-8 car was either the agent or employe of appellee, or that he was in the course of any employment with appellee.

The trial was to a jury, but at the close of the evidence upon motion of appellee, the court instructed a verdict for appellee, which was duly returned and judgment entered that appellant take nothing by his suit, and that appellee go hence with its costs of suit. This appeal followed.

The facts are: On September 28, 1939, the Carl Markley Motor Company was a Texas corporation engaged in the business of selling Ford automobiles and in buying and selling used cars in the city of Beaumont. We shall refer to the Carl Markley Motor Company as "Markley." On said date, appellant, T. J. Fowler

was a young single man engaged in barber work in said city. He had been residing in Beaumont and barbering for about one and one-half months at said date. His mother resided at Highlands in Harris County, Texas, where he had formerly resided with her. Fowler had met Carl Markley, but was not well acquainted with him. On that date, September 28, 1939, Fowler, accompanied by a young man friend left the barber shop where he worked and went to the Carl Markley Motor Company office intending, if he could make proper arrangements, to purchase a used car for his own use. He selected a car and was told by Carl Markley that the terms of payments were agreeable. Fowler had been using a 1936 Chevrolet car which belonged to his mother at Highlands, Texas. He desired to trade the Chevrolet in on the car he wished to purchase, and Carl Markley valued it at $225 to which Fowler agreed, but informed Markley that the Chevrolet car belonged to his mother and that he would have to get her consent to trade it in as a payment on the car he desired to purchase. Markley had one of his employes to bring out a new Ford V-8 car and fill it up with gasoline and oil, and told Fowler that he could drive it—the new Ford—over to Highlands and see his mother and get her consent for him, Fowler, to trade in the old Chevrolet as a payment on the car that Fowler wished to purchase. Markley filled out a blank transfer of the old Chevrolet car for Fowler's mother to sign transferring the Chevrolet car to him, Markley, to be used by Fowler as a payment on the car to be purchased, and told Fowler to get in the new Ford V-8 car and to go that day to see his mother and get her to sign the transfer of the Chevrolet, and to return to Beaumont with the new Ford that same day. Fowler took the transfer papers that Markley gave him, got in the new Ford car and started to see his mother at Highlands, as Markley told him to do. While enroute travelling on Highway No. 90, the collision occurred. Fowler testified that he was not to receive any commission for perfecting the transaction, if he should get his mother to sign the transfer of the Chevrolet car to Markley and he purchased the used car which he had selected, but that he had to have the consent of his mother to trade in her old car as a payment on the car to be purchased by him from Markley, and that he desired to get for his mother the best amount possible for her car, and that he was to pay the remainder of the consideration for the car he purchased, if the deal was consummated, for his own use.

This appeal involves the sole point of the propriety of the instructed verdict. The court instructed the verdict for appellee on the theory that Fowler, to whom Markley had entrusted the car for him to go to see his mother, and, if he could get her to sign the papers transferring her old Chevrolet car to Markley the trade in value, $225, to be applied to a payment by her son on the car to be purchased by him from Markley, was not an agent for Markley in the contemplated transaction, but was a bailee in possession of the Markley car for Markley.

Appellant presents two assignments of error against the judgment. They both urge the same contention—that Fowler was acting as the agent of Markley, and for Markley's benefit. He has presented an able and interesting brief supporting this contention.

We have concluded that, under the undisputed facts, the judgment must be upheld. Markley simply placed a car in the possession of Fowler to be used by Fowler in going to see his mother to obtain her permission for him to trade in her old car as a payment on the Markley car which he, Fowler, had selected to purchase—not the one he was allowed to drive, but a used car—and Markley had no right of control or actual control over Fowler in the trade which he might make with his mother in obtaining her permission to trade in the old car. In this Fowler had the untrammelled right to make any arrangement with his mother he could—as to whether he would pay for the secondhand car, or whether the ownership of the secondhand car should be in him or his mother, and whether his mother should have the right to use the secondhand car, and any other matters which might occur between him and his mother in arriving at their understanding in the matter. Fowler's interest in the transaction was not in line with that of Markley. Fowler desired to obtain the utmost value possible for his mother's old car, this to redound to both his and her benefit, not to Markley's—his and his mother's interest was adverse to that of Markley, and so his attitude was not that of an agent who must act for the benefit of his master.

Markley did not have one of his employes to accompany Fowler on the trip to see Fowler's mother. Fowler had complete charge of and control of the Markley car. If any one should be considered as a prospective purchaser of the Markley car, it was Fowler. The buyer of a car can not be the agent of the seller. Markley was seeking to sell Fowler a used car. Fowler, in another car (new Ford V-8) of Markley's, was going to see his mother to obtain her consent for him to trade in an old car owned by her as a payment on the used car he sought to purchase. It seems to be settled in this state that an automobile dealer is not liable to a third person for injuries negligently inflicted by a prospective buyer while testing the automobile unaccompanied by an employe of the dealer. Bertrand v. Mutual Motor Co., Tex.Civ.App., 38 S.W.2d 417, 418, writ refused. In the cited case, Mrs. Bertrand suffered personal injuries when she was struck by an automobile owned by the Mutual Motor Company, and sued for damages occasioned by her injuries. The car at the time was being driven by a prospective purchaser who (as here) was not accompanied by an employe or salesman of the Motor Company. The case was tried to a jury who found that the prospective purchaser (in the instant case Fowler) was the agent of the Motor Company which owned the car. The trial court set aside the verdict and granted judgment for the Motor Company, and upon appeal to the Eastland Court of Civil Appeals, the judgment was affirmed, and writ was denied. In denying the proposition that the prospective purchaser was an agent of the owner of the car, the court said:

"We have been referred to no Texas case deciding the exact question here presented, although we think many could be cited deciding it in principle. There are, however, many well-considered opinions from other jurisdictions deciding the exact question. While the reasoning is not the same in all of these opinions, the conclusions reached are in harmony. A prospective purchaser cannot be the agent of the seller to demonstrate a car to himself. 'The relation of agency is the consensual relation existing between two persons, by virtue of which one of them is to act for and in behalf of the other and subject to his control.' Restatement of the Law of Agency, by the Am.Law Inst., as quoted in 2 Tex.Jur. p. 384, § 5. In testing a car the prospective purchaser is not acting for the benefit, or in behalf of the seller, but is acting in behalf of himself. His own interests and those of the seller are antagonistic. That fact prevents the existence of the relation of principal and agent. False representations made by him to himself in connection with the demonstration would afford no basis for an action for cancellation. Knowledge acquired by him while making the demonstration would not be imputed to the seller. One essential element of agency, namely, one person acting for and in behalf of another, is wholly lacking. There is also lacking the essential element of control by the one of the actions of the other. As noted above, the prospective purchaser was alone in the car when the accident occurred. She was not acting under the direction of the seller, but chose her own place and method for testing the car. An independent contractor may act for and in behalf of another, but, since he is not under the other's control, it is held that the relation of agency does not exist. A bailee may act for the benefit of the bailor, but that fact does not make him an agent. The same reason is applicable here. The contention of appellants would extend the scope of the liability of automobile dealers far beyond the limitations set by the adjudicated cases. We can see no reason for making this extension and can see impelling reasons for declining to do so. Marshall v. Fenton, 107 Conn. 728, 142 A. 403; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897; Emery v. McCombs (Sup.) 167 N.Y.S. 474; Flaherty v. Helfont, 123 Me. 134, 122 A. 180; Goodrich v. Musgrave, etc., Co., 154 Iowa 637, 135 N.W. 58; Barton et al. v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025; Blashfield's Cyclopedia of Automobile Law, Vol. 2, p. 1323, § 7."

It will be noted that in the Bertrand case, supra, the court cited with approval (and which was apparently approved by the Supreme Court in refusing application for writ of error) the case of Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897. In that case a car was delivered to a prospective purchaser so that he might take it to show to his wife and secure her consent or agreement to purchase same. In a suit by a third party for damages, it was held that in taking the car to show it to his wife with a view of purchasing same, he was not an agent of the owner of the car, and no liability existed against

the owner for damages growing out of a tort occurring during the trip to display the car to the prospective purchaser's wife.

In the case of Kantola v. Lovell Automobile Co., 157 Or. 534, 72 P.2d 61, 62, the defendant company delivered a car to a minor son of a lady so he could take it to show it to his mother that she might be persuaded to purchase it for the use of the minor son. Previous to that time a salesman of the company had called on the mother for the purpose of selling that particular car to her. A collision occurred between the car driven by the minor and a third party, and the suit was brought by the party, Kantola, against the company for damages growing out of the collision. In denying the right of the third party to recover, the Supreme Court of Oregon said:

"The plaintiff brought this action to recover damages for injuries received in a collision between an automobile in which she was riding, and one belonging to the defendant, which was then being driven by one John Kildall, a boy about 15½ years of age. It is alleged in the complaint, and for the purposes of this case we shall assume, that the boy's negligence caused the accident. The case is here upon an appeal from a judgment in favor of the plaintiff.

"The defendant is a corporation engaged in the business of buying and selling new and used cars in Astoria, and the car in question was a used car. It appears from the evidence, and it is undisputed, that just prior to the accident the defendant, with the consent of the boy's mother, delivered the car to the boy for the purpose of having him show it to his mother in order to induce her to purchase it for him so that he could use it in distributing a magazine, the agency of which he expected to secure. Once before the same car had been delivered to the boy for the same purpose, and at that time he had driven his mother to church.

"The evidence further shows that one of defendant's salesmen had on several occasions called on the mother for the purpose of selling this particular car to her.

"It is undisputed that the boy was not in the employ of the defendant company and that the car was delivered to him for the special purpose above stated.

"The plaintiff contends that the transaction of delivering the car to the boy for that special purpose and the benefit which would have resulted to the defendant had the mother purchased the car were sufficient to constitute the boy as an agent of the defendant and to render the defendant liable for the boy's negligence.

"We think the transaction created a bailment and not an agency, and that, if the boy was the agent of any one, he was the agent of his mother for whom he was acting.

"'Agency,' as defined by the American Law Institute, Restatement of Agency, § 1, 'is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"

In Gulf Refining Co. v. Ray Motor Co., 129 Me. 499, 152 A. 226, one Wheldon was considering buying a secondhand car and went to the Ray Motor Company, which dealt in secondhand cars. A salesman of the company took the car out to demonstrate it to Wheldon, and after driving a short distance, Wheldon apparently doing the driving, Wheldon stated that the car appeared to be alright, but that he wanted his wife to see it, and requested the salesman to drive the car to his home and show it to his (Wheldon's) wife, but the salesman said he was unable to do so, and instructed Wheldon to drive the car himself and show it to his wife. Wheldon drove away with the car and had a collision causing the suit. There, as here, it was contended that Wheldon, the driver of the car, was the agent of the automobile company because he was going for the purpose of bringing about a sale of the company's car which would have benefitted the company. In denying this contention, the court said: "To hold that he was acting as agent for the company in persuading his wife to buy the car, not only finds no support in the evidence, but contemplates a relationship of the parties which even to the casual observer seems absurd."

In the Georgia case of Harris v. Whitehall Chevrolet Company, 55 Ga.App. 130, 189 S.E. 392, the court said that the relation between a motor dealer and a prospective purchaser who is driving the car to test it, unaccompanied by an employe of the motor company, is not that of principal and agent, but is that of bailor and bailee; that it was well settled law that a bailor was not liable for the negligent acts of the bailee in driving the car.

In the Washington case of Hamp v. Universal Automobile Co., 173 Wash. 585, 24 P. 2d 77, 78, the automobile company directed a prospective purchaser, Mr. Allen, to drive the automobile he wished to purchase to test same, and further authorized him to drive the car to Lewiston, Idaho, which he undertook to do, and a collision occurred. In the suit the plaintiff alleged that the automobile company in directing the prospective purchaser, Allen, to take and drive the car, "thereby appointing the said Mr. Allen their agent and employee for the purpose of demonstrating said automobile." In denying this contention, the court said: "The facts, as recited in the complaint, other than the statement quoted to the effect that Mr. Allen was the agent and employee of the auto company, show nothing more than the relation of bailor and bailee. The allegation that Mr. Allen was the agent and employee for the purpose of demonstrating the automobile was a mere conclusion of the pleader. A demurrer admits all facts which are well pleaded, and all intendments and inferences that may be fairly and reasonably drawn therefrom, but it does not admit recitals of conclusions either of fact or law." And again: "The fact that the owner of the automobile delivered it to Mr. Allen as a prospective purchaser does not justify the imputation to the owner of Allen's negligence while driving it for demonstration purposes."

■■ The above cited cases, (and many others to the same effect and upon similar facts could be cited) show the rule well established that a prospective purchaser of a car driving same at the direction of the owner for the purpose of determining whether he will buy same, or for the purpose of exhibiting same to some relative of the user for the same purpose, is a bailee in possession of the car for a specified purpose, and not an agent of the owner. The general rule is that a bailor is not liable to third persons for their injuries resulting from the bailee's negligent use of the thing bailed. 8 C.J.S., Bailments, p. 318, § 40; 6 Am.Jur., Bailments, § 313. In 2 C.J.S., Agency, p. 1027, § 2, it is said: "A bailee over whose actions the bailor has no control is not an agent, even though he acts for the benefit of the bailor; and a bailee acting on behalf of himself and whose interests are antagonistic to those of his bailor cannot be the agent of the bailor," citing Bertrand v. Mutual Motor Co., Tex.Civ. App., 38 S.W.2d 417. This is well established law. Here Fowler was acting for his mother and himself in securing the greatest value possible for the old Chevrolet car of his mother to be traded in by him to Markley as a payment on the car he was to purchase from Markley. He was not interested in boosting the price of the car he intended to purchase, or to aid in making a profit on it for the seller. His interest was antagonistic to that of the seller.

The judgment of the court should be affirmed and it is so ordered.

Affirmed.

WALKER, Chief Justice (concurring).

I concur with Judge O'Quinn, who has written the opinion for the court, that the judgment of the lower court in favor of appellee on an instructed verdict should be affirmed, but not on the theory of his opinion that the relation between appellee and Fowler was that of bailor and bailee.

The following statement is taken from appellee's brief: "If the car was purchased, he was going to make all the payments on the car; was going to purchase a new Ford automobile; that the car that he was actually driving when the collision occurred was not the car he intended to trade for, but instead was a used car, though nevertheless a Ford."

The following statement is from Judge O'Quinn's opinion, that Fowler "desired to trade the Chevrolet in on the car he wished to purchase, and Carl Markley valued it at $225 to which Fowler agreed, but informed Markley that the Chevrolet car belonged to his mother and that he would have to get her consent to trade it in as a payment on the car he desired to purchase." It appears from these statements and the general statement made by Judge O'Quinn, that Markley and Fowler had agreed upon the terms of the car trade, and that nothing was left to be done to close the trade except the securing of the consent of Fowler's mother. The facts on that issue are thus stated by Judge O'Quinn:

"Markley had one of his employes to bring out a new Ford V-8 car and fill it up with gasoline and oil, and told Fowler that he could drive it—the new Ford—over to Highlands and see his mother and get her consent for him, Fowler, to trade in the old Chevrolet as a payment on the car that Fowler wished to purchase. Markley filled out a blank transfer of the old Chevrolet car for Fowler's mother to sign trans-

ferring the Chevrolet car to him, Markley, to be used by Fowler as a payment on the car to be purchased, and told Fowler to get in the new Ford V-8 car and to go that day to see his mother and get her to sign the transfer of the Chevrolet, and to return to Beaumont with the new Ford that same day. Fowler took the transfer papers that Markley gave him, got in the new Ford car and started to 'see his mother at Highlands, as Markley told him to do. While enroute travelling on Highway No. 90, the collision occurred. Fowler testified that he was not to receive any commission for perfecting the transaction, if he should get his mother to sign the transfer of the Chevrolet car to Markley and he purchased the used car which he had selected, but that he had to have the consent of his mother to trade in her old car as a payment on the car to be purchased by him from Markley, and that he desired to get for his mother the best amount possible for her car, and that he was to pay the remainder of the consideration for the car he purchased, if the deal was consummated, for his own use."

On these facts it follows, in my judgment, that the business of Fowler's trip to see his mother was a joint adventure for the mutual benefit of Fowler and appellee. The essential thing necessary to close the deal between appellee and Fowler was the mother's consent. To secure her consent they planned a trip to her home—on the trip, appellee contributing its car and gas and Fowler contributing his time; Markley prepared the papers, and Fowler was to secure her signature to these papers. The only purpose of the trip was the securing of the mother's consent, and in this there was no conflict of interest between appellee and Fowler; there was no dealing at arm's length. They were mutually interested in securing her consent, without which they could not make their trade. True, the trip had only one purpose, but as said in 15 R.C.L. 500, "A joint adventure generally relates to a single transaction."

I do not agree with Judge O'Quinn in the following conclusions taken from his opinion: (a) "Markley had no right of control or actual control over Fowley in the trade which he might make with his mother in obtaining her permission to trade in the old car."

Markley not only had the "right of control" but exercised it; he, quoting from Judge O'Quinn's opinion, "told Fowler to get in the new Ford V-8 car and to go that day to see his mother and get her to sign the transfer of the Chevrolet, and to return to Beaumont with the new Ford that same day." But this "right of control," on the whole record, was not that of a master, but the limited control of a member of the joint adventure.

(b) "Fowler had the untrammeled right to make any arrangement with his mother he could—as to whether he would pay for the second hand car, or whether the ownership of the second hand car should be in him or his mother, and whether his mother should have the right to use the second hand car, and any other matters which might occur between him and his mother in arriving at their understanding in the matter. Fowler's interest in the transaction was not in line with that of Markley."

On the facts as I understand them, Fowler did not have "the untrammelled right" to make a deal with his mother. The terms of the deal had been agreed upon between him and Markley, the papers had been prepared, and in securing his mother's consent, he could not make the trade with her in violation of the instructions Markley had given him. It was immaterial on the issue before us whether Fowler would pay for the secondhand car, whether he would own the secondhand car, or whether his mother should have the right to use it.

(c) "Fowler desired to obtain the utmost value possible for his mother's old car, this to redound to both his and her benefit, not to Markley's—his and his mother's interest was adverse to that of Markley."

As I understand the facts, Fowler had no authority, as between him and Markley, to offer his mother more than the agreed price of $225. In submitting to his mother the price to be paid by appellee for her old car, there was no conflict of interest between appellee and Fowler, because the price had already been agreed upon between them.

Appellant was not injured by a prospective purchaser of the car in the collision—by Fowler driving the car he proposed to buy, as in Bertrand v. Mutual Motor Co., Tex.Civ.App., 38 S.W.2d 417, nor by Fowler's attempt to exhibit and demonstrate to his mother the car he proposed to buy as in Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897,

and Kantola v. Lovell Automobile Co., 157 Or. 534, 72 P.2d 61. These, and the other authorities cited by Judge O'Quinn, announce the law of bailor and bailee, and simply hold that the facts therein discussed constituted a bailment. These authorities cited sustain the rule announced by Judge O'Quinn, "that a prospective purchaser of a car driving same at the direction of the owner for the purpose of determining whether he will buy same, or for the purpose of exhibiting same to some relative of the user for the same purpose, is a bailee in possession of the car for a specified purpose, and not an agent of the owner." Since Fowler was not driving appellee's car for the purpose of determining whether he would buy it, or for the purpose of exhibiting it to some relative or other person, as an essential element of his buying the car, the authorities cited are not, in my judgment, in point.

Appellant plead his case and tried it, and judgment was rendered by the court and he perfected his appeal from the judgment, on the theory of master and servant. On no theory of his petition did he present for adjudication the issue of joint adventure. The case must be reviewed in this court on the theory on which it was tried in the lower court—that of master and servant; since the evidence did not present that issue, judgment was properly instructed in favor of appellee.