MERCEDES DÍAZ, RAFAEL, EMILIA y CARMEN DE JESÚS y CÁNDIDA RAMOS ESPADA, demandantes y apelantes, *v.* NICOLÁS ITURREGUI y MARYLAND CASUALTY COMPANY, demandados y apelados.

Núm. 10372.—*Sometido:* Febrero 1, 1951. *Resuelto:* Febrero 15, 1951.

201

*Bolívar Pagán,* abogado de los apelantes; *F. Prieto Azúar,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Los demandantes radicaron pleito de daños y perjuicios contra Nicolás Iturregui y la demandada Maryland Casualty Company, alegando que Cecilio de Jesús fué arrollado y muerto por el automóvil de Iturregui mientras dicho automóvil era conducido "por la chófer Clemencia Iturregui Fernández, en gestiones del demandado Nicolás Iturregui y de la familia de éste. . ." En la contestación se admitió que de

Jesús fué arrollado y muerto por el automóvil de Iturregui mientras era conducido por Clemencia Iturregui, pero se negó que ella "condujese el referido vehículo como chófer o empleada del demandado Nicolás Iturregui, o en gestiones o para beneficio del mismo o de su familia. . ."

Antes del juicio, los demandantes notificaron interrogatorios a los demandados a tenor con la Regla 33 de las de Enjuiciamiento Civil. La primera pregunta era la siguiente: "¿Hacia dónde iba Clemencia Iturregui en el automóvil a que se refiere la demanda, en los momentos del accidente sufrido por Cecilio de Jesús, y en qué gestiones iba dicha Clemencia Iturregui?" Los demandados contestaron esta pregunta así: "La Sra. Clemencia Iturregui, según información, conducía el automóvil Pontiac licencia 12,528, el día 16 de marzo, 1949, en dirección de Río Piedras hacia Santurce, por la Avenida Luis Muñoz Marín, con destino a una escuela."

Posteriormente, pero sin que el juicio se hubiese celebrado, y de conformidad con la Regla 36 los demandantes notificaron a los demandados el siguiente escrito para admisión de hechos:

"1. Que en los momentos del accidente a que se refiere el presente pleito, Clemencia Iturregui conducía el vehículo mencionado en la demanda llevando a la escuela, para recibir instrucción, a una hija menor del demandado Nicolás Iturregui.

"2. Que Clemencia Iturregui es hija legítima del demandado Nicolás Iturregui, y en los momentos del accidente vivía en compañía con dicho demandado Nicolás Iturregui."

Los demandados contestaron este escrito en la siguiente forma:

"1. El demandado admite que en los momentos del accidente Clemencia Iturregui llevaba, en el vehículo guiado por ella, a una hermanita suya e hija del demandado, en dirección de la escuela en la que a la sazón dicha Clemencia Iturregui era profesora y en la que la menor era estudiante. Refiere además el demandado que el referido día del accidente su dicha hija, Clemencia Iturregui, tomó para su uso el automóvil del demandado, por hallarse el de ella en reparación.

"2. Admite el demandado que dicha Clemencia Iturregui es hija legítima suya, mayor de edad, y que el día del accidente vivía, o convivía, con el demandado."

Durante el juicio los anteriores documentos fueron admitidos en evidencia como *exhibits* de los demandantes. Estos no presentaron prueba otra alguna sobre la cuestión de si Clemencia era la agente o empleada de Nicolás Iturregui. Cuando los demandantes finalizaron la presentación de su prueba, los demandados solicitaron un *nonsuit* por el fundamento de que la evidencia no estableció la relación de principal y agente o de patrono y empleado existente entre Iturregui y la conductora del automóvil. La corte inferior suspendió el juicio con el fin de estudiar y resolver la moción. Más tarde emitió una opinión declarándola con lugar y dictó sentencia a favor de los demandados. Contra dicha sentencia han apelado los demandantes.

El primer señalamiento es que la corte inferior cometió error al declarar con lugar la moción de *nonsuit* por el fundamento de que no se probó que Clemencia era agente de Nicolás Iturregui.

La corte de distrito declaró con lugar la moción de *nonsuit* sobre teorías alternativas. En primer lugar, resolvió que las contestaciones a los interrogatorios y la admisión de hechos no establecieron afirmativamente que Clemencia conducía el automóvil en gestiones del demandado Iturregui; o sea, llevando a la menor a la escuela. La corte inferior basó esta conclusión en los siguientes factores: En su escrito sobre admisión de hechos los demandantes no solicitaron una admisión al efecto de que Clemencia conducía el automóvil a requerimiento de Nicolás Iturregui y con instrucciones de que llevara a la niña a la escuela. Y la contestación al escrito de los demandantes no toca esta cuestión. Además, en su admisión los demandados añaden que Clemencia había tomado para su uso el automóvil porque el de ella estaba en reparaciones. Los demandantes, descansando entre otras cosas, en la obligación del padre de educar a sus hijos menores de conformidad

con el artículo 153 del Código Civil, ed. de 1930, atacan esta primera conclusión de la corte inferior. Es innecesario pasar sobre esta cuestión ya que preferimos basar nuestra sentencia en el segundo punto del caso, que es el más importante. ([1])

La conclusión alternativa de la corte de distrito se basó en la suposición de que Clemencia conducía el automóvil en gestiones de Nicolás Iturregui; v. g., llevando a su hija a la escuela. Aquí también la corte inferior resolvió que Iturregui no era responsable. Decidió que el artículo 1803 del Código Civil, según ha sido enmendado por la Ley núm. 120, Leyes de Puerto Rico, 1943 (pág. 373), no es de aplicación a los hechos de este caso. ([2]) La corte de distrito indicó que el artículo 1803, tal cual ha sido enmendado, hacía responsable al dueño de un vehículo si éste era conducido por sus "empleados o agentes. . . mientras actúen en el desempeño de sus funciones como tales empleados o agentes de acuerdo con los términos del contrato de trabajo." Dijo la corte que este lenguaje no incluía a la hija del demandado Iturregui, quien no trabajaba para él sino que era una profesora, aun cuando ella conducía a la escuela a la hija menor que también era su hermana, en una gestión del demandado.

---

([1]) El enfoque que hemos hecho del caso hace innecesario que determinemos si la corte inferior tenía derecho a considerar la última' oración de la primera admisión de hechos. Los demandantes alegan que esta oración no respondía a la pregunta y debió haber sido ignorada por la corte inferior.

([2]) El artículo 1803, según fué enmendado, provee en parte como sigue: "Los son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en .el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones, y los dueños o propietarios de cualquier vehículo de motor destinado al servicio privado de su dueño o propietario respecto de los perjuicios que causen en la operación de los mismos sus empleados o agentes, debidamente autorizados para el manejo de dichos vehículos, y mientras actúen en el desempeño de sus funciones como tales empleados o agentes de acuerdo con los términos del contrato de trabajo."

Una disposición similar se encuentra en el artículo 19 de la Ley núm. 279, Leyes de Puerto Rico, 1946 ((1) pág. 599), conocida como la Ley de Automóviles y Tránsito.

Convenimos con la corte inferior. La enmienda de 1943 al artículo 1803, debe leerse a la luz de nuestra jurisprudencia. Antes de 1943, si no se trataba de una empresa, "sólo yendo su dueño en el automóvil cuando ocurrió el accidente, podría exigirse de él . . . que indemnizara los daños por el mismo ocasionados." *Rivera* v. *Mejías*, 62 D.P.R. 1, 4, y casos citados. Este es un concepto bastante diferente al de la responsabilidad bajo el derecho común por los actos de un agente. La Legislatura reconoció que el texto anterior del artículo 1803 no se ajustaba a las condiciones modernas y lo enmendó en el 1943. Pero no incorporó en el texto enmendado las amplias doctrinas del derecho común sobre principal y agente en cuanto a este punto. Más bien cuidadosamente limitó la responsabilidad a aquellos casos en que el conductor es un empleado o agente que actúa de acuerdo con los términos de su contrato de trabajo. Y aquí no tenemos tal caso. Por el contrario, a lo sumo tenemos aquí a una profesora quien a solicitud de su padre llevó consigo a su hermana menor para dejarla en la escuela. Al aprobar un estatuto tan limitado, la Legislatura optó por conceder al padre inmunidad contra responsabilidad alguna en tales casos. Solamente la Legislatura ampliando dicho estatuto puede hacer que el padre sea responsable bajo estas circunstancias.

Los demandantes citan innumerables casos de los Estados Unidos continentales en que exactamente con los mismos hechos, se ha resuelto que el padre es responsable bajo las doctrinas sobre principal y agente del derecho común. Por ejemplo, véanse *Richards* v. *McCall*, 58 S.W.2d 432 (Ark., 1933); *Olberg* v. *Kroehler*, 1 F.2d 140 (C.C.A. 8, 1924). De lo expuesto surge claro que estamos obligados a seguir nuestro propio estatuto y no dichos casos. En igual forma, no podemos subvertir los claros y limitados términos del artículo 1803, según fué enmendado, y por fíat judicial injertar a la ley en esta jurisdicción la liberal doctrina de gestión familiar (*family purpose doctrine*) en que también descansan los demandantes en este caso. *Annotation*, 132 A.L.R. 981; Pros-

ser *on Torts*, pág. 500 *et seq.* En verdad, hemos implícitamente rechazado ya la doctrina de gestión familiar en *Rivera* v. *Mejías*, supra. Como dijo la corte inferior, bajo los hechos de ese caso, de existir tal doctrina aquí, necesariamente el resultado hubiera sido diferente en el mismo. *Cf. Pérez Mercado* v. *Picó*, 63 D.P.R. 401, 404.

El segundo señalamiento es que la corte inferior abusó de su discreción al negarse a reabrir el caso para recibir prueba adicional en cuanto al uso del automóvil y en cuanto a la misión de la conductora al momento del accidente como agente de Nicolás Iturregui.

La moción de los demandantes estaba concebida en términos generales y no indicaba en qué consistiría la prueba o quién declararía sobre la cuestión. Al declarar sin lugar esa moción, la corte inferior dijo que durante la vista de la misma había inquirido de los demandantes respecto a la naturaleza de la prueba adicional, y que éstos le informaron que "dicha prueba iría dirigida a probar la relación de agente y principal entre el dueño del vehículo envuelto en el litigio y la conductora del mismo." En vista de lo anteriormente expuesto, convenimos con la corte inferior en que no conducía a ningún fin práctico reabrir el caso, toda vez que, según dijo la corte de distrito, "aún en el supuesto de que Clemencia Iturregui, por instrucciones de su señor padre hubiera conducido el automóvil de aquél para llevar a su menor hija a una escuela, aún así el demandado no sería responsable por no ser dicha Clemencia Iturregui el agente o empleado de que habla el artículo 1803 del Código Civil."

En apelación, nuevamente guardan silencio los demandantes en cuanto a los detalles de la supuesta prueba adicional. Su abogado dice solamente que el no haber presentado esta prueba adicional fué a lo sumo un error técnico cometido por él y que las partes no deben sufrir las consecuencias del mismo. Pero no conocemos prueba alguna—y los demandantes no la han mencionado—que convierta a una hija mayor de edad, que se admite es una profesora y no el

chófer de su padre, en un "agente" o "empleado" de éste bajo un "contrato de trabajo" sencillamente porque su hija lleve consigo a su hermana a la escuela en el automóvil de su padre y a requerimiento de éste. La corte inferior no abusó de su discreción al declarar sin lugar la moción de los demandantes para reabrir el caso.

*La sentencia de la corte de distrito será confirmada.*

