CÁNDIDA USERA SANTIAGO, representada por su esposo LO-
RENZO DÁVILA, demandante y apelada, *v.* ALEJANDRO GON-
ZÁLEZ RODRÍGUEZ, ÁNGEL ARCE, JOSÉ M. MORALES y THE
PORTO RICAN AND AMERICAN INSURANCE COMPANY,
demandados y apelantes los tres últimos.

Número 10693.

*Sometido:* 4 de diciembre de 1952.   *Resuelto:* 25 de marzo de 1953.

*Córdova & González* y *Alberto Picó,* abogados de los apelantes; *Raúl Matos* y *Jaime A. García Blanco,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Cándida Usera Santiago, representada por su esposo, demandó a Alejandro González Rodríguez, Ángel Arce, J. M. Morales y The Porto Rican and American Insurance Co., ante el anterior tribunal de distrito por lesiones recibidas por la demandante al ser arrollada por un automóvil manejado por González. Celebrado el juicio en los méritos, el tribunal de distrito dictó sentencia a favor de la demandante por la suma de $1,500, costas y $300 para honorarios de abogado. González no apeló de dicha sentencia pero los otros tres demandados apelaron. El único error señalado es que "erró el tribunal inferior al resolver que bajo los hechos probados los codemandados apelantes son legalmente responsables de los daños sufridos por la demandante."

No existe controversia en cuanto a los hechos, por haberse estipulado prácticamente la mayor parte de ellos. El 10 de agosto de 1950 la demandante, mientras caminaba por la carretera de Coamo a Santa Isabel, fué arrollada por un automóvil perteneciente a Morales, dueño de una agencia de automóviles, y manejado por González. Éste manejaba el vehículo como comprador potencial. Arce, vendedor de automóviles y empleado de Morales, le había dado a González las llaves del automóvil y permiso para llevárselo con el fin de probarlo. González, quien aparentaba tener de 18 a 19 años de edad, no tenía licencia para conducir automóviles. Arce no indagó si González tenía licencia de conductor antes de darle permiso para llevarse el automóvil. Morales había au-

torizado a Arce que permitiera a los compradores potenciales sacar los automóviles para probarlos. González conducía solo el automóvil cuando ocurrió el accidente. Las partes estipularon que el accidente se debió a la negligencia e "impericia" de González al conducir el automóvil.

Empezaremos con ciertas proposiciones de derecho con las cuales convienen las partes. En primer lugar, González conducía el automóvil como comodatario y no como agente de Arce o de Morales. En segundo lugar, un comodante que como aquí no tenía control sobre la manera en que el comodatario conducía un automóvil, de ordinario no sería responsable por los daños causados a un peatón debido a la *negligencia* del comodatario al conducir el automóvil. *Hernández* v. *De Jesús*, 70 D.P.R. 1, 3, y casos allí citados; 5 Blashfield, *Cyclopedia of Automobile Law and Practice*, ed perm., págs. 42–43. En tercer lugar, el dueño de un automóvil no es responsable por los actos *negligentes* del conductor de su automóvil meramente porque haya consentido a que dicho conductor haga uso de su automóvil. *Díaz* v. *Iturregui*, 72 D.P.R. 200.

Sin embargo, este caso no está gobernado por ninguna de las anteriores proposiciones de derecho. Primeramente, aquí las partes estipularon que el accidente se debió, en parte, a la "impericia" de González. En su consecuencia, existe una conexión definida y lógica entre el hecho de que González no tenía licencia de conductor y el hecho de la ocurrencia del accidente. Por consiguiente no son de aplicación aquí nuestros casos que resuelven que bajo las circunstancias de los mismos no había conexión causal entre la falta de una licencia y los accidentes que en ellos ocurrieron. *Maldonado* v. *Hamilton*, 32 D.P.R. 225; *Vélez* v. *Font*, 35 D.P.R. 312; véase *Pueblo* v. *Pereira*, 49 D.P.R. 891. Por el contrario, en el presente caso la falta de una licencia fué un eslabón importante en la cadena de eventos que fueron la causa próxima del accidente.

▮ Pasemos ahora al segundo factor que saca este caso de las anteriores reglas generales; es decir, que Arce no in-

dagó si González tenía licencia de conductor. Hacemos constar claramente que no estamos resolviendo que el dueño de un automóvil es automáticamente responsable por un accidente causado por la *negligencia* de una persona a quien le permitió conducir su automóvil y quien posee licencia de conductor. Pero aquí el accidente se debió en parte a *impericia*. Esta impericia podía razonablemente esperarse de una persona que no tiene licencia de conductor. Arce, por tanto, fué negligente bajo las circunstancias concurrentes en ni siquiera preguntarle a este muchacho, quien aparentaba tener 18 ó 19 años de edad, si tenía o no licencia de conductor. Y tal negligencia de parte de Arce se le imputa a su patrono, Morales, bajo el artículo 1803 del Código Civil, según fué enmendado por la Ley núm. 120, Leyes de Puerto Rico, 1943 (pág. 373), toda vez que Arce debió haber efectuado esta indagación como empleado de Morales en relación con el desempeño de sus deberes, uno de los cuales era permitir a los compradores potenciales probar aquellos automóviles que interesaran.

■ Nuestro criterio en este caso se robustece en el hecho de que la conducta de Arce constituyó una infracción del artículo 12(a) de la Ley de Automóviles y Tránsito, Leyes de Puerto Rico, 1946 ((1) pág. 599).(¹)  Véase *Tapia* v. *Martínez*, 70 D.P.R. 55. Los apelantes arguyen que la persona dueña de o en control de un vehículo viola el artículo 12(a) solamente si ella *sabe* que la persona que lo conduce con su anuencia no tiene licencia de conductor. No estamos conformes. Algunos de los casos en que descansan los apelantes tratan de estatutos que contienen las palabras "a sabiendas". Véanse *Mundy* v. *Pirie-Slaughter Motor Co.*, 206 S.W.2d 587 (Tex., 1947); *Shifflette* v. *Walkup Drayage & Warehouse Co.*, 169 P.2d 996 (Calif., 1946); *Hoke* v. *Atlantic Grey-*

---

(¹) El artículo 12(a) reza así: "Ninguna persona permitirá que un vehículo de motor de su propiedad o que esté bajo su gobierno, sea manejado por persona alguna que no esté legalmente autorizada para hacerlo; tampoco permitirá que sea manejado su vehículo en contravención de las disposiciones de esta Ley."

*hound Corporation,* 40 S.E.2d 345 (N.C., 1946). Los casos que interpretan estatutos como el nuestro están divididos. Preferimos adoptar el criterio de que nuestro estatuto significa lo que dice, y que constituye una infracción al artículo 12(*a*) el que una persona, como ocurrió aquí, le permita a un muchacho de 18 ó 19 años de edad conducir un automóvil, propiedad de o bajo el control del primero, sin hacer ninguna clase de averiguación sobre si el muchacho tiene licencia de conductor. Compárense *Fitiles et al.* v. *Umlah et al.,* N.E.2d 212 (Mass., 1948) y *Hertz Driv-Ur-Self System* v. *Hendrickson,* 121 P.2d 483 (Colo., 1942) con *Chamberlain* v. *Riddle,* 38 A.2d 521 (Pa., 1944) y *Bowdler* v. *St. Johnsbury Trucking Co.,* 4 A.2d 871 (N.H., 1939).

Nuestros casos no arrojan mucha luz sobre este punto. *Casillas* v. *Rengel,* 51 D.P.R. 638, fué resuelto a base de una excepción previa a la demanda. La cuestión precisa que ahora está ante nos fué dejada sin resolver porque no se alegó claramente que el dueño tenía conocimiento de que la persona que tomó el automóvil prestado lo hizo con el propósito de conducirlo personalmente. Aquí no hay duda alguna de que Arce sabía que González era el que iba a conducir el automóvil.

El caso de *Ojea* v. *Drug Co. of P. R.,* 40 D.P.R. 652, es distinguible. En él se resolvió que la corporación demandada no era responsable por la conducta de un chófer al manejar un automóvil para un vendedor empleado de la corporación, que estaba autorizado por ésta para emplear un chófer. Es cierto que dijimos de paso a la página 653 que "La prueba no revela que la compañía tuviera el más ligero conocimiento de que el chófer empleado no tenía licencia." Pero en el caso no hay discusión alguna sobre si la compañía debió haber tenido conocimiento de este hecho. Además, los factores decisivos en el caso aparentemente fueron (1) que no hubo conexión causal entre la falta de una licencia y el accidente, y (2) que los actos negligentes no se realizaron en el desempeño

de ningún deber para con la demandada. En su consecuencia, nada encontramos en el caso de *Ojea* que sea contrario a lo que en éste resolvemos.

El de *Cardona* v. *Nigaglioni*, 43 D.P.R. 727, no es enteramente aplicable porque la cuestión allí envuelta era la responsabilidad de un comodatario de un automóvil hacia el comodante debido a que el primero permitió que una persona no autorizada a conducir manejara el automóvil en tal forma que causó su destrucción. No obstante, nuestro lenguaje en dicho caso es significativo. Dijimos a la pág. 729 que "Si el apelante hubiese requerido a Raúl Bacó [el chófer], como era su deber, para que le mostrase su licencia para manejar automóviles se hubiera convencido de que no la tenía. No lo hizo así y permitió que el automóvil que le fué prestado fuese manejado por persona que no había demostrado su suficiencia ante el Departamento del Interior y que en el juicio no se demostró que aun careciendo de ella sabía manejar automóviles." (Corchetes nuestros.)

Nos damos cuenta de los casos en los Estados Unidos continentales que resuelven que de ordinario no es responsable un vendedor por los daños causados por la *negligencia* de un comprador potencial que conduce un automóvil con el consentimiento del vendedor con el fin de probarlo y no va acompañado de un agente del dueño. 5 Blashfield, supra, pág. 42; *Roy* v. *Hammett Motors*, 192 So. 570 (Miss., 1940); *Gathright* v. *Carl Markley Motor Co.*, 146 S.W.2d 307 (Tex., 1940); *Saums* v. *Parfet*, 258 N.W. 235 (Mich., 1935). Pero esa regla general no se aplica y sí existe responsabilidad donde concurren dos condiciones: (1) el dueño sabía o debió saber que el conductor no tiene licencia o es incompetente; (2) existe una conexión causal entre la falta de una licencia o la incompetencia y el accidente. *Mundy* v. *Pirie-Slaughter Motor Co.*, supra; *Williamson* v. *Eclipse Motor Lines*, 62 N.E.2d 339 (Ohio, 1945); Anotación, 168 A.L.R. 1364; 2 *Restatement, Torts*, sec. 390, pág. 1058. *Cf. Chamberlain* v. *Riddle*, supra. En este caso existen ambas condiciones. Hemos concluído,

atendidas todas las circunstancias, que era deber de Arce indagar si González, un muchacho de 18 ó 19 años de edad, tenía licencia. Por tanto debió saber que no la tenía. Asimismo hemos concluído que hubo una conexión causal en este caso entre la falta de una licencia y el accidente.

En vista de lo anterior, Arce, el vendedor de automóviles, era responsable a la demandante por las lesiones recibidas por ella cuando fué arrollada por el automóvil conducido por González, el comprador potencial. Y como Arce actuaba en el desempeño de sus deberes como empleado de Morales, dueño de la agencia automovilística, al permitirle a González conducir el automóvil como comprador potencial, surge que Morales también es responsable a la demandante.

*La sentencia del anterior tribunal de distrito será confirmada.*