José Cordero Santiago, demandante y recurrido, *v.* Acisclo Lizardi Caballero et al., demandados y recurrentes.

*Número:* CE-62-35 *Resuelto:* 3 de octubre de 1963

152

*Ponsa Feliú, Calderón & Souss,* abogados de los recurrentes; *Manuel A. Bustelo,* abogado del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La fuente prístina de la responsabilidad de aquellos que no han causado de una manera directa el daño, tratándose de culpa extracontractual, es el Art. 1803 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 5142, [1] fundamentalmente derivada, en unos casos, del deber de vigilancia—los padres, [2] los tutores y los maestros por los actos de sus hijos, pupilos y alumnos—y en otros, de verdadera culpa en la selección desacertada de los subordinados—los dueños o directores de un establecimiento o empresa por los actos de sus agentes o empleados. [3] Ya desde *Vélez* v. *Llavina,* 18 D.P.R. 656, 663–665

---

[1] "La obligación que impone el artículo anterior (de reparar el daño causado por culpa o negligencia) es exigible, no sólo por los actos u omisiones propios, sino por la de aquellas personas de quienes se debe responder."

[2] *Portilla* v. *Ward, Jr.,* 87 D.P.R. 768 (1963); *Alvarez* v. *Irizarry,* 80 D.P.R. 63 (1957); *Sociedad Gananciales, etc.,* v. *Cruz,* 78 D.P.R. 349 (1955); *Pacheco* v. *Pomales,* 55 D.P.R. 341 (1939); *Soto* v. *Corte,* 52 D.P.R. 474 (1938); *Méndez* v. *Casellas,* 47 D.P.R. 540 (1934); *Rodríguez* v. *Santos,* 40 D.P.R. 48 (1929); *Portalatín* v. *Noriega,* 33 D.P.R. 790 (1924); *Nadal* v. *Miranda,* 27 D.P.R. 323 (1919).

[3] Borrell Macia comenta en *Responsabilidades Derivadas de Culpa Extracontractual Civil* (Ed. Bosch, 2a. ed., 1958), pág. 170, que "Desde el punto de vista aceptado por la legislación vigente en esta materia, sin culpa o negligencia no existe el deber de indemnizar (y así como la responsabilidad de los padres y tutores veíamos que estribaba en falta de cuidado o vigilancia, de educación, etc.), los fundamentos—además de que en ciertos casos puede darse la falta de vigilancia—estriban en que el pa-

(1912), habíamos caracterizado esta responsabilidad como de excepción por revestir el carácter de pena, aunque civil, y por ende, sostuvimos que solamente cabía imponerla en uno de los supuestos taxativamente consignados en la ley. Por eso, con el vigoroso disenso del Juez Señor MacLeary, allí se sostuvo que el dueño de un automóvil no era responsable de los actos de culpa o negligencia de su empleado como conductor a menos que el vehículo formare parte de una empresa. [4]

trono, dueño, director, etc., están obligados a cerciorarse de las condiciones de pericia, probidad y ponderación de los sujetos que trabajan a sus órdenes *(culpa in eligendo);* debe conocer la capacidad de sus subordinados para no imponerles una obligación, ni encargarles servicios superiores a su capacidad, a su preparación y a sus condiciones, físicas, intelectuales, de ciencia, etcétera; y es preciso que se ponga la diligencia y cuidado necesarios en la elección de las personas a quienes se confía alguna cosa, como garantía de la convivencia social.

"Se responde de los actos realizados en virtud de la misión encomendada; ya sea ésta más o menos permanente, gratuita o retribuida, siempre y cuando aparezca con claridad la relación o nexo entre el que ordena el servicio y el que lo cumple, aún cuando el causante del daño haya obrado con imprudencia que pueda calificarse de temeraria o sea consecuencia de haber realizado, en el curso del servicio, algún acto sin autorización del principal, no necesario ni conveniente para el cumplimiento del cometido encargado; e incluso—no siendo ésta la causa única y directa del accidente —que haya infringido alguna disposición reglamentaria; pero si realiza el acto fuera de sus atribuciones—por su cuenta propia, aunque sea valiéndose del cargo—no repercute al principal la responsabilidad.

*"La responsabilidad establecida lo es en razón a que el autor del hecho culposo es dependiente o está a la orden del que responde subsidiariamente y no en razón a que sea propiedad de éste la cosa que materialmente causa el daño."* (Subrayado nuestro.)

Bonet Román, *Código Civil Comentado* (Aguilar, 1962), pág. 1507, señala que "la responsabilidad impuesta por el art. 1903 [1803 de P.R.] a los que deben responder por otras personas no es subsidiaria, sino directa, como lo exige la causa que la motivó; y la establece la Ley por razón del incumplimiento de los deberes que imponen las relaciones especiales de autoridad o superioridad que median entre el que ha de reparar el daño y el que dio motivo a él en sus actos u omisiones."

[4] *Truyol y Compañía* v. *West India Oil Co.,* 26 D.P.R. 361 (1918); *Méndez* v. *Baldassari,* 28 D.P.R. 613 (1920); *Izquierdo* v. *Andrade,* 39 D.P.R. 938 (1929); *Aponte* v. *Palacios,* 55 D.P.R. 697, 699 (1939); *Antonsanti* v. *M. Rodríguez & Cía., Sucrs.,* 53 D.P.R. 994 (1938); *Casillas* v. *Rengel,*

El advenimiento del automóvil con los consiguientes riesgos en su operación y manejo para vidas y propiedades planteó un problema de convivencia social que requería acción legislativa. Es así como al aprobarse la Ley Núm. 75 de 13 de abril de 1916 (Leyes, pág. 144), primera medida que realmente intentó reglamentar en forma comprensiva todo lo concerniente al uso y operación de vehículos de motor en Puerto Rico,[5] se insertó el Art. 17 que dispuso que "El dueño de cualquier vehículo de motor será responsable de los daños causados por la negligencia del conductor o chauffeur mientras dicho dueño estuviere en el vehículo."[6] La responsabilidad civil se imponía mientras el dueño del vehículo estuviere en el mismo, independientemente de si se trataba o no de una empresa.[7] Esta situación subsistió hasta la aprobación de la Ley Núm. 55 de 27 de abril de 1942 (Leyes, pág. 527), que derogó expresamente la Ley Núm. 75[8] y que no contenía disposición alguna sobre la responsabilidad de los daños que se causaren en su operación por terceros. Para

---

51 D.P.R. 638 (1937); *Méndez* v. *Sucrs. de Blanes S. en C.*, 47 D.P.R. 404 (1934).

[5] En verdad la legislación anterior a 1916 era incompleta y de puro tanteo. Las únicas disposiciones sobre responsabilidad civil se referían a los daños causados a los caminos. Véanse, Sec. 10(1) de la Ley Núm. 41 de 10 de marzo de 1910 (Leyes, pág. 131); Sec. 12 de la Ley de 14 de marzo de 1907 (Leyes, pág. 368); Sec. 19 de la Ley de 8 de marzo de 1906 (Leyes, pág. 15).

[6] En *Alicea* v. *Aboy,* 23 D.P.R. 108, resuelto en 28 de julio de 1915, se pretendió distinguir por el demandante la rigurosa doctrina de *Vélez* v. *Llavina,* 18 D.P.R. 656 (1912), y se sostuvo su inaplicabilidad fundándose en que al momento de ocurrir el accidente el propietario del automóvil iba en el vehículo. Tal posición fue rechazada.

[7] *Torres* v. *Vidal,* 28 D.P.R. 972, 975 (1920); *Morales* v. *Caraballo,* 27 D.P.R. 591 (1919); *Allen* v. *International Express Co.,* 28 D.P.R. 485 (1920); *Sucn. D. Rodríguez* v. *Umpierre, Jr.,* 44 D.P.R. 167 (1932); *Izquierdo* v. *Andrade,* 44 D.P.R. 727 (1933); *Sánchez* v. *López,* 47 D.P.R. 668 (1934); *Rivera* v. *Mejías,* 62 D.P.R. 1 (1943). Cf. *Pérez Mercado* v. *Picó,* 63 D.P.R. 401 (1944).

[8] En 6 de mayo de 1940 se aprobó la Ley Núm. 140 que incorporó sustancialmente la Ley Uniforme para Reglamentar el Tránsito en las Carreteras. Esta ley derogó únicamente toda ley o disposición conflictiva con la misma.

subsanar esta inadvertencia, al año siguiente la Asamblea Legislativa aprobó la Ley Núm. 120 de 12 de mayo de 1943 (Leyes, pág. 373) mediante la cual se enmendó el Art. 1803 del Código Civil, adicionándosele una disposición al efecto de que "[Son responsables] los dueños o propietarios de cualquier vehículo de motor destinado al servicio privado de su dueño o propietario respecto de los perjuicios que causen en la operación de los mismos sus empleados o agentes, debidamente autorizados para el manejo de dichos vehículos, y mientras actúen en el desempeño de sus funciones como tales empleados o agentes de acuerdo con los términos del contrato de trabajo."(9) Una disposición similar afortunadamente se adoptó mediante el Art. 19 de la Ley Núm. 279 de 5 de abril de 1946 (Leyes, pág. 599), 9 L.P.R.A. sec. 189, pues al enmendarse el Art. 1803 en ocasión de la aprobación de la "Ley de Reclamaciones y Demandas contra el Estado, " Ley Núm. 104 de 29 de junio de 1955 (Leyes, pág. 551), 32 L.P.R.A. (Supl. 1962) sec. 3077 y ss., se omitió el texto transcrito precedentemente. Interpretando el alcance de este texto dijimos en *Díaz* v. *Iturregui*, 72 D.P.R. 200, 205 (1951), que "La Legislatura reconoció que el texto anterior del artículo 1803 no se ajustaba a las condiciones modernas y lo enmendó en 1943. Pero no incorporó en el texto enmendado las amplias doctrinas del derecho común sobre principal y agente en cuanto a este punto. Más bien cuidadosamente limitó la responsabilidad a aquellos casos en que el conductor es un empleado o agente *que actúa de acuerdo con los términos de su contrato de trabajo.*"

Este breve recuento histórico nos trae al umbral de la importante cuestión que se plantea en este recurso: el alcance e interpretación que debemos dar a la Sec. 13-101 de la actual Ley de Vehículos y Tránsito, Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 1751. Pero antes, por la importancia

---

(9) En virtud de la misma ley se agregó la Sec. 14-A a la Ley Núm. 55 de 27 de abril de 1942, concebida en términos sustancialmente idénticos.

que tiene en el proceso hermenéutico, es preciso hacer refe-
rencia expresa a los hechos y a la doctrina reiterada en *Díaz* v.
*Iturregui*, 72 D.P.R. 200 (1951), *Usera* v. *González*, 74
D.P.R. 487 (1953) y *Kirchberger* v. *Gover*, 76 D.P.R. 907
(1954).

*Díaz* v. *Iturregui*, 72 D.P.R. 200 (1951): El 16 de marzo
de 1949 el causante de los demandantes fue arrollado por un
vehículo propiedad del demandado Nicolás Iturregui, condu-
cido por su hija Clemencia, mientras ésta llevaba consigo a
una hermana menor para dejarla en la escuela, a ruegos del
propio demandado. Absolvimos de responsabilidad a Iturregui
indicando que su hija mayor de edad—quien se admitió era
una profesora—no era su "agente" o "empleado" bajo un
"contrato de trabajo" según estos términos se empleaban en
el Art. 1803 del Código Civil. *Usera* v. *González*, 74 D.P.R.
487 (1953): El 10 de agosto de 1950, un comprador potencial
de un automóvil que le fue entregado a prueba causó un
accidente debido a su impericia como conductor. Reconocimos
que un comodante que no tiene control sobre la manera en que
el comodatario conduce el vehículo de ordinario no sería res-
ponsable por los daños ocasionados debido a la negligencia de
éste al conducir, aunque siempre le hicimos responsable pero
descansando para ello en el acto negligente de su empleado al
entregarle el vehículo a una persona que el agente sabía o de-
bía saber, por su apariencia física, que no tenía licencia o era
un incompetente. *Kirchberger* v. *Gover*, 76 D.P.R. 907
(1954): Reafirmamos que tratándose de un vehículo de motor
destinado al servicio privado de su dueño era preciso esta-
blecer que el conductor era un agente o empleado del dueño
demandado que actuaba en el desempeño de sus funciones
como tal conforme a los términos de su contrato de trabajo
para que el patrono o principal respondiera de los daños
causados en su operación. ([10])

([10]) Véanse, *Betancourt* v. *U.S. Fidelity & Guaranty Co.*, 78 D.P.R.
650 (1955); *Sociedad Gananciales, etc.*, v. *Cruz*, 78 D.P.R. 349, 353 (1955);
cf. *Hernández* v. *De Jesús*, 70 D.P.R. 1 (1949).

La Sec. 13-101 de la vigente Ley de Vehículos y Tránsito, *supra*, lee así:

"El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o está bajo el dominio o control de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.

"La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste."

 Una lectura cuidadosa del estatuto revelará que el hecho básico determinante de la responsabilidad es que se haya obtenido *la posesión* mediante la autorización expresa o tácita del dueño. Tanto es así que establece una presunción en ese sentido por el mero hecho de la conducción, si bien la misma es de carácter controvertible. ¿Significa ello que el dueño del vehículo puede limitar el permiso en cuanto a la manera, el tiempo, el lugar y los propósitos para los cuales puede emplearse y enervar así su responsabilidad legal en caso de que se transgredan las condiciones bajo las cuales el permiso fue concedido? ¿Libera de responsabilidad el uso no autorizado del vehículo? ¿Es suficiente cualquier desviación del uso permitido, por insignificante que ella sea, para absolver al propietario?

 Arguyen las recurrentes que el único propósito de la disposición de 1960 fue eliminar el requisito de agencia contenido bajo la legislación anterior, y no establecer una responsabilidad por el mero hecho de la entrega voluntaria del vehículo. Sin embargo, a poco que se examine la historia legis-

lativa de la sección considerada, se observará que el propósito que animó a los autores de la medida fue precisamente garantizar a cualquier persona la reparación de los daños causados mediante la operación culposa o negligente de un vehículo de motor, cuando la posesión del mismo fue entregada voluntariamente por su dueño. Baste reproducir aquí el informe de la Comisión de lo Jurídico de la Cámara de Representantes en relación con el P. de la C. 842, (¹¹) cuyo propósito original era enmendar el Art. 1803 del Código Civil insertándole un texto similar al de la vigente Sec. 13-101:

"El Artículo 19 de la Ley de Automóviles y Tránsito, tal y como rige actualmente, limita la responsabilidad del dueño de un vehículo de motor destinado al servicio privado de su dueño, por los daños que cause la operación de dicho vehículo por terceras personas, a aquellos casos en que estas terceras personas al momento del accidente actúan como agentes o empleados del dueño y estén 'debidamente autorizados para el manejo del mismo mientras actúen en el desempeño de sus funciones como tales empleados o agentes, de acuerdo con los términos del contrato de trabajo.'

"Vuestra Comisión entiende que el ámbito de responsabilidad fijado por el Artículo 19 de la citada Ley de Automóviles y Tránsito es sumamente restrictivo. Un vehículo de motor, en manos de una persona inexperta o negligente, es un instrumento altamente peligroso. La seguridad de los ciudadanos tanto en cuanto a su persona como en cuanto a sus propiedades, requiere que el Estado tome toda clase de medidas no sólo para reducir las causas de accidentes de vehículos de motor, cuya incidencia es alarmante, *sino también proveer el derecho a la adecuada compensación a aquéllos que sean víctimas de estos accidentes.*

"Tal y como rige la ley actualmente es posible que el dueño de un vehículo de motor con menosprecio del riesgo que con ello le crea a sus conciudadanos, le facilite su vehículo a una persona falta de pericia, buen juicio, circunspección, o tal vez con vista defectuosa, o algún otro impedimento físico, sin que se le le imponga responsabilidad por tal acción excepto cuando el

---

(¹¹) *Diario de Sesiones*, vol. XIII, págs. 1312–1313 (1960). Un informe muy similar se rindió por la Comisión de lo Jurídico Civil del Senado, *Diario de Sesiones, op. cit.*, págs. 2301–2302

conductor sea su agente o empleado en el desempeño de sus funciones. *Díaz* v. *Iturregui,* 72 D.P.R. 201; *Usera* v. *González,* 74 D.P.R. 487; *Kirchberger* v. *Gover,* 76 D.P.R. 907. *Más grave resulta a la situación así creada cuando se le facilita el vehículo a una persona que no tiene recursos económicos con qué responder por los daños que cause.*

"*La debida protección a la comunidad exige que sobre el dueño del vehículo recaiga la responsabilidad primaria por su uso.* El P. de la C. 842 tiene el propósito de enmendar la regla contenida en el Artículo 19 de la Ley de Automóviles y Tránsito de forma que el dueño de cualquier vehículo de motor es responsable de los daños y perjuicios que se causen, mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el dominio o control de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. Se dispone, además, que en todo caso se presumirá que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona. Esta, naturalmente, es una presunción de carácter rebatible. Dispone el proyecto, finalmente, que la persona por cuya negligencia haya de responder ·el dueño del vehículo, vendrá obligada, a su vez, a resarcir a éste. Entiende también vuestra Comisión que esta nueva norma sobre responsabilidad en casos de daños causados por la operación de un vehículo de motor, es mejor y más propio incluirla como parte del Artículo 1802 del Código Civil, que como parte de la Ley de Automóviles y Tránsito. De hecho, el Artículo 1803 contenía hasta el año 1955 una disposición similar a la que hoy contiene el Artículo 19 de la Ley de Automóviles y Tránsito. En ese año, al aprobarse la Ley de Reclamaciones Contra el Estado, la referida disposición fue inadvertidamente derogada, aunque, como cuestión de hecho, sin consecuencia práctica alguna pues quedó siempre subsistente el referido Artículo 19.

"Por lo tanto, al enmendar la citada disposición, la Comisión cree que lo propio es trasladar la misma, así enmendada, a su fuente de origen, o sea, al Código Civil, derogando simultáneamente lo dispuesto al efecto en la Ley de Automóviles y Tránsito.

"Por entender que el Sustitutivo al P. de la C. 842 viene a remediar una necesidad apremiante en nuestra legislación, vuestra Comisión ha acordado recomendar a la Cámara su aprobación."

■ La expresión clave de este informe, es a nuestro juicio, la que se refiere a que "La debida protección a la comunidad exige que sobre el dueño del vehículo recaiga la responsabilidad primaria por su uso." No puede olvidarse que esta sección forma parte de una pieza legislativa de apremiante necesidad para reglamentar el tránsito. Calmar el desasosiego reinante por las proporciones alarmantes de los accidentes de tránsito y proponer una serie de medidas que propendan a la seguridad de vidas y propiedades son dos fases importantes de esta legislación. *Pueblo* v. *Otero Valle*, 89 D.P.R. 73 1963). Una rápida ojeada a las estadísticas sobre accidentes de tránsito(12) confirmará lo expuesto:

### Accidentes de Tránsito, Muertos, Lesionados y Vehículos Registrados

| Año | Número de Accidentes | Muertos | Lesionados | Vehículos Registrados |
|---|---|---|---|---|
| 1956–57 | 18,377 | 245 | 9,129 | 127,930 |
| 1957–58 | 19,393 | 265 | 9,662 | 140,197 |
| 1958–59 | 22,062 | 274 | 11,125 | 156,563 |
| 1959–60 | 27,244 | 341 | 12,798 | 176,707 |
| 1960–61 | 28,382 | 300 | 13,000 | 202,803 |
| 1961–62 | 31,222 | 351 | 14,608 | 215,889 |

Puede concluirse que el estatuto fue aprobado para proteger al tercero perjudicado permitiéndole recobrar los daños que se le causaren.

Por otro lado es innegable que las expresiones en relación

---

(12) Tomado de la publicación de la Policía de Puerto Rico "Datos Estadísticos—1960–61." Los datos para el año 1961–62 aparecen en Serrano, *Los "Perseguidores de Ambulancias,"* Rev. C. Abo. P. R., vol. XXIII, págs. 305, 325 (1963).

con las desviaciones en cuanto a la manera, el tiempo, el lugar y los propósitos de la autorización han surgido al calor de la doctrina de *respondeat superior*. Es significativo que nuestras propias manifestaciones sobre el particular han evidenciado consistentemente una tendencia dirigida a proteger a los damnificados, y que hemos impuesto responsabilidad tanto en los casos en que el conductor se ha apartado de las instrucciones expresas del patrono, como cuando actuó en forma expresamente prohibídale. Véanse, *Martínez* v. *U.S. Casualty Co.*, 79 D.P.R. 596 (1956); *Lafontaine* v. *Municipio*, 79 D.P.R. 583 (1956); *Vázquez* v. *Pueblo*, 76 D.P.R. 594 (1954); *González* v. *Compañía Agrícola*, 76 D.P.R. 398 (1954); *Quiñones* v. *Tropical Beverages*, 74 D.P.R. 364 (1953); *Lloréns* v. *Lozada*, 73 D.P.R. 271 (1952); *Rivera* v. *Maldonado*, 72 D.P.R. 479 (1951); cf. *Vigio* v. *Cartagena*, 71 D.P.R. 710 (1950); *Acosta* v. *Crespo*, 70 D.P.R. 239 (1949); *Díaz* v. *Rodríguez*, 69 D.P.R. 533 (1949). Véase, además, Anotación, *Consent, Liability and Guilt: A study in Judicial Method*, 7 Stan. L. Rev. 507 (1955).

Los casos citados por los recurrentes se refieren en su mayoría a interpretaciones sobre el efecto de cláusulas de cubierta colectiva (*omnibus clause*) contenidas en pólizas de seguro por responsabilidad pública. La diferencia en redacción de un ejemplo típico de estas cláusulas([13]) y de la disposición estatutaria que interpretamos demuestra su inaplicabilidad; en aquéllas, el criterio determinante es el del *"uso"* autorizado, en la disposición estatutaria, es el de *"posesión"* autorizada. Igual distinción resulta en la comparación de los

---

([13]) Generalmente está concebida en estos términos: "En lo que respecta al seguro por daños personales y a la propiedad, la palabra 'asegurado' incluye al referido asegurado, cualquier otra persona que *use* el vehículo y a cualquier persona u organización que legalmente sea responsable por *el uso* del mismo, siempre que el automóvil sea *usado* por el asegurado o *con su permiso.*" (Tomada de *Sociedad Gananciales, etc.* v. *Cruz*, 78 D.P.R. 349, 354 (1955).)

estatutos de otros estados ([14]) y explica las expresiones de los tribunales locales en su interpretación.

■ El único estatuto que hemos encontrado que establece la *posesión* autorizada como índice de responsabilidad es la Sec. 130 del "Vehicles and Highway Traffic Act" de la Provincia de Alberta, Canadá: "En una acción en reclamación por pérdida o daños sufridos por una persona causados por un vehículo en una carretera, . . . una persona que conduzca el vehículo que haya adquirido *posesión* del mismo con el consentimiento, expreso o implícito, del dueño, se reputará que es agente o empleado del dueño . . ." Interpretando su alcance, la Corte Suprema de Alberta señaló en *Guyton* v. *Lacroix*, 30 D.L.R.2d 488 (1962), que cuando el dueño consiente a la adquisición de la posesión por un tercero de un vehículo de su propiedad responde por los daños que éste causare en su operación, no embargante el hecho de que el consentimiento se concedió para un propósito limitado y el causante del daño se apartó de tal propósito. Más aún, sostiene que el momento preciso para determinar la legitimidad de la posesión es exclusivamente el de la entrega, en ausencia de una demostración de fraude o coacción. Véanse, *Porter* v. *Terra Nova Motors Ltd.*, 25 D.L.R.2d 728 (1960) y *Honan* v. *McLean* (1953) 3 D.L.R. 193, en el cual se afirma que el factor determinante no es el uso a que se destina el vehículo sino la forma en que se obtuvo la posesión.

■ Considerada la trayectoria de la disposición estatutaria y los precedentes, y atentos además a las necesidades que impone una convivencia social ordenada, no podemos leer en la Sec. 13-101 las limitaciones que propone la parte recurrente. Resolvemos, por tanto, que, conforme al estado actual de la ley, la mera posesión voluntariamente autorizada de un ve-

---

([14]) 62A *N.Y. Consol. Laws Ann., Vehicle and Traffic Law*, Sec. 388 McKinney's); *Ann. Calif. Codes, Vehicle*, Sec. 17150 (West's); Brodsky, *Motor Vehicle Owners Statutory Vicarious Liability in Rhode Island*, 19 B.U.L. Rev. 448 (1939); 21 Minn. L. Rev. 823 (1937); 31 Calif. L. Rev. 572 (1943); 17 So. Cal. L. Rev. 326 (1944); 16 So. Cal. L. Rev. 242 (1943).

hículo de motor es suficiente para imponer responsabilidad civil a su dueño.

*Aplicada esta norma a los hechos del presente caso,* [15] *procede ordenar la confirmación de la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 17 de octubre de 1962.*

---

[15] Los hechos probados que son pertinentes fueron determinados por el Tribunal de Distrito así:

"(2) El día 13 de octubre de 1961 a las 10:45 P.M. José Cordero Santiago manejaba un automóvil 'Chevrolet' de su propiedad por el lugar denominado 'Carretera Vieja, Sitio Cupey', Río Piedras, y al llegar a un sitio donde había un accidente de automóviles la policía ordenó a dicho José Cordero que se detuviera, lo que éste hizo y minutos después de estar estacionado su auto fue chocado.

"(3) El choque sufrido por el auto del demandante lo provocó Julio Díaz Fernández cuando conducía el auto 'Chevrolet' Modelo 1952, propiedad de Acisclo Lizardi Caballero.

"(4) A la fecha del accidente Julio Díaz Fernández era empleado de Caldas & Co., Inc., y tenía en su posesión el automóvil 'Chevrolet' antes referido propiedad de Acisclo Lizardi Caballero y que estaba asegurado con una póliza otorgada a favor de Caldas & Co., Inc. quien había enviado a Julio Díaz Fernández a buscar el automóvil antes referido el que estaba en un taller de reparaciones. En otras ocasiones Julio Díaz Fernández había cogido prestado el auto antes referido y se lo llevaba para su casa por la noche. En ocasiones Julio Díaz Fernández se ha llevado por las noches camiones de Caldas & Co., Inc. para su casa con consentimiento de éstos.

"(5) Como hombre de confianza de Caldas y Compañía el co-demandado Julio Díaz Fernández tenía el carro en su posesión y estaba autorizado a manejarlo cuando ocurrió el accidente.

"(6) Con motivo del accidente objeto de este caso el auto propiedad de José Cordero Santiago sufrió daños cuya reparación costó cuatrocientos dólares ($400.00) y dicho demandante se vio privado del uso del automóvil por lo que gastó $90.00 en pago de pasajes.

"(7) El accidente que dio margen al caso que ahora se considera se debió a la negligencia exclusiva observada por Julio Díaz Fernández en el manejo del automóvil propiedad de Francisco Lizardi Caballero."