JORGE MCGEE QUIÑONES, demandante y recurrente, *v.* DR. ARNALDO PALMER, demandado y recurrido.

*Número:* R-64-52 *Resuelto:* 25 de noviembre de 1964

*Amancio Arias Cestero,* y *Celestino M. Iriarte,* abogados de la recurrente; *Rivera Zayas, Rivera Cestero & Rúa,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

◼ Después de hacer un recuento de las distintas épocas en cuanto a las normas de responsabilidad por el uso y operación de automóviles, y al considerar la última expresión legislativa sobre el particular—la Sec. 13-101 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1751 [1]—con especial atención al historial durante el proceso de su aprobación, resolvimos en *Cordero Santiago* v. *Lizardi Caballero*, 89 D.P.R. 150 (1963), que 1) a partir de su vigencia el hecho básico determinante de la responsabilidad es que se haya obtenido la posesión mediante la autorización expresa o tácita del dueño; 2) el dueño del vehículo no podía enervar su responsabilidad legal en el caso de que quien obtuviere la posesión en la forma mencionada transgrediese limitaciones en cuanto a la manera, el tiempo, el lugar y los propósitos de la autorización; 3) la interpretación y aplicación de la norma debe responder al propósito primario de proteger a los damnificados inocentes. [2]

---

[1] "El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o está bajo el dominio o control de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño; con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.

"La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste."

[2] El informe de la Comisión de lo Jurídico de la Cámara de Representantes en relación con el P. de la C. 842, *Diario de Sesiones*, vol. XIII, págs. 1312–1313 (1960), es claro a este respecto. Dice: "La debida protección a la comunidad exige que sobre el dueño del vehículo recaiga la responsabilidad primaria por su uso."

Precisa examinar las determinaciones de hechos de la sala de instancia que son pertinentes para dilucidar si la doctrina enunciada fue aplicada correctamente:

"1—Para el 4 de diciembre de 1960 el Dr. Arnaldo Palmer era dueño del automóvil Renault, modelo 1960, tablillas 717–726. Para la fecha del accidente la Western Assurance Co., compañía de seguros debidamente autorizada para hacer negocios en Puerto Rico, había expedido la correspondiente póliza de seguros cubriendo la responsabilidad civil en que pudiese incurrir el Dr. Palmer con motivo del uso y disfrute del auto antes descrito.(3)

"2—El día del accidente, que era domingo, el Dr. Palmer llevó su automóvil al taller de hojalatería del señor González y allí lo entregó a un hijo de éste, de nombre Manuel González, para que lo lavara, engrasara, y le hiciese cualquier reparación mecánica, de menor cuantía que fuese necesaria. Manuel González fue instruido por el Dr. Palmer para que una vez terminase su encomienda devolviese el automóvil a la residencia de dicho médico.

"3—En violación de las órdenes específicas recibidas, González utilizó el automóvil que le habían confiado para su propio beneficio. En compañía de otros jóvenes de apellidos Osorio, Ortiz y Herrera, fue a buscar a eso de las 9:00 de la mañana al demandante al sitio donde éste trabajaba como ayudante de conserje en el teatro Paramount. Ayudaron al demandante a terminar su trabajo y entonces todos juntos salieron en una excursión que el propio demandante califica como una gira [sic] artística. Visitaron la Playa de Luquillo, estuvieron en el Yunque, siguieron hasta Naguabo y se bañaron en la Playa de Naguabo. De regreso el automóvil que era conducido sin capota y a bastante velocidad, se enfrentó con una guagua que corría en dirección contraria a una velocidad exagerada. Al desviarse el conductor del Renault, que en ese momento lo era Manuel Osorio Orozco, y debido a la velocidad que traía el automóvil y al movimiento que hizo el conductor con el guía al hacer uso de los frenos, hizo que el carro diese un zig sag [sic] y se volcó sufriendo el demandante los golpes y magulladuras que más adelante se

---

(3) [Este hecho no fue objeto de prueba. Presumimos que el tribunal deriva su conocimiento de la contestación a un interrrogatorio sometido al demandado, que no fue ofrecida en evidencia.]

describen. Este accidente ocurrió en la jurisdicción municipal de Juncos.

"4—. . .

"5—La persona que guiaba el automóvil en el momento del accidente, Manuel Osorio, nunca ha sido empleado del demandado y éste nunca le ha prestado su automóvil y en el momento del accidente no realizaba gestión alguna para el beneficio del Dr. Palmer."

Concluyó el tribunal que de las determinaciones transcritas se infería que ni la persona que conducía el vehículo al momento del accidente ni aquélla a quien se le había confiado para ciertos fines tenían posesión del automóvil mediante la autorización expresa o tácita del dueño. Declaró sin lugar la demanda. (⁴) Al resolver una moción de reconsideración en 11 de febrero de 1964, ratificó su criterio expresando que González había recibido el automóvil de manos del demandado para un fin específico, y en violación de las instrucciones expresas que había recibido lo usó para otros propósitos, conducta que equivalía a un hurto de uso. (⁵)

Erró.

 Como hemos dicho, una vez obtenida la posesión mediante la autorización expresa o tácita del dueño, éste no puede eludir su responsabilidad civil mediante prueba sobre limitaciones en el uso u operación del automóvil. Tal hecho podrá dar margen a una reclamación del dueño contra la persona de cuya negligencia se ve obligado a responder, pero es inoperante frente al tercero perjudicado. El hecho determinante es la *posesión* autorizada, no es el *uso* autorizado. En el presente caso no cabe duda de que González obtuvo la po-

---

(⁴) Para la fecha en que se dictó la sentencia aún no habíamos emitido la opinión en *Cordero Santiago* v. *Lizardi Caballero*, 89 D.P.R. 150.

(⁵) El delito de hurto de uso se define en el Art. 444a del Código Penal, 33 L.P.R.A. sec. 1700, en la siguiente forma:

"Toda persona que sin la autorización del dueño, o de quien legal o debidamente le represente, tomare intencionalmente un automóvil . . . con el objeto de usar el mismo temporalmente, será culpable de delito menos grave."

sesión del vehículo con la autorización del demandado. Es por eso que resulta igualmente especioso tratar de asimilar la situación a un delito de hurto de uso, pues claramente Osorio conducía el automóvil autorizado por quien "debidamente" representaba al dueño. Pero hay más. De la prueba surge que González, a quien se confió el vehículo, solamente tenía una licencia de aprendizaje, hecho conocido por el demandado.[6] Puede deducirse que el doctor Palmer anticipaba que debido a este hecho, González tendría que ser acompañado por un conductor autorizado[7] o que el automóvil sería conducido por un conductor autorizado. Cf. *Sociedad Gananciales, etc.* v. *Cruz*, 78 D.P.R. 349 (1955) ; *Usera* v. *González*, 74 D.P.R. 487 (1953). De ahí que no tenga la importancia que pretende atribuírsele al hecho de que el vehículo era conducido por un tercero, ya que sería aplicable la disposición de la Sec. 13-101, *supra,* que se refiere a "hacer o permitir que el mismo sea operado por tercera persona."

Pero aun cuando no fuere aplicable tal disposición, atendiendo a los propósitos de la ley de proteger a los terceros, siempre sostendríamos que tal hecho es irrelevante, y que la conducción por un tercero autorizado por la persona a quien se confió el vehículo, equivale a la *posesión* autorizada de éste. A idéntica conclusión se llegó en la interpretación de un esta-

---

[6] En dos ocasiones durante su testimonio, el demandado dijo que "Yo, cuando se lo entregaba, venía algún amigo de él *acompañándolo* hasta casa a traerlo o yo lo iba a buscar personalmente" (T.E. pág. 6), y, ". . . otras veces él lo llevaba acompañado de una persona autorizada" (T.E. pág. 10).

[7] La Sec. 3-105 (d) de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 655 (d), lee así:

"Toda persona a quien se le conceda una licencia de aprendizaje podrá conducir un vehículo de motor por las vías públicas, sujeto a la reglamentación que a tal efecto estableciere el Secretario y estará obligada a tener a su lado inmediato y contiguo, cuando las características del vehículo lo permitan, una persona debidamente autorizada para conducir tal tipo de vehículo de motor. La persona que estuviere al lado del aprendiz deberá además estar en condiciones físicas y mentales que le permitan actuar o instruir a tal aprendiz y hacerse cargo del vehículo, si ello fuere necesario."

tuto que imponía responsabilidad, no ya por la posesión, sino por el uso del vehículo, en el conocido caso de *Grant* v. *Knepper*, 156 N.E. 650 (N.Y. 1927), opinión del Juez Cardozo en la Corte de Apelaciones de Nueva York, en donde se dijo: "Carucci [el conductor autorizado] no abandonó el camión cuando encomendó a otra persona la dirección del vehículo. Permanecía a cargo del camión, y lo estaba utilizando con la autorización del dueño, y aún en el negocio de éste. No dejó de usarlo, y usarlo con autorización, aunque se hubiese prohibido o fuese ilegal el método de su operación." Y más adelante añade: "El dueño es responsable . . . si el acto negligente ocurre durante la vigencia del uso autorizado." (a la pág. 652.)

■ Cualquier otra solución confligiría con el propósito que persiguen estas disposiciones especiales en estatutos sobre responsabilidad del dueño de un vehículo que entrega la posesión o autoriza el uso del mismo, que no es otro que trasladar la carga de los daños a aquella parte que está en mejor posición para soportarla. El dueño del automóvil debe sufrir los riesgos, no la víctima inocente. A poco que se examine la cuestión se verá que la situación del dueño no es tan onerosa como aparenta ser. Puede optar por no facilitar o entregar su vehículo a otra persona o tener su responsabilidad cubierta con un seguro suficiente. Véase, *The Owner Consent Statutes*: *The Distinctions Between Enterprise and Instrumentality Liability*, 31 U. Chi. L. Rev. 355-364 (1964).

■ Réstanos aclarar que las circunstancias en que se entregó la posesión en el presente caso señalan que la operación del vehículo formaba parte principal, y no meramente incidental, de la entrega, pues el demandado no se limitó a llevar el automóvil al taller del padre de González para ser lavado y engrasarlo, sino que suponía que una vez efectuados estos menesteres, le sería devuelto a su hogar. En otras palabras, la autorización concedida requería que en algún momento

González operara el vehículo en la vía pública. Es precisamente el riesgo a que están expuestos los ciudadanos en la vía pública lo que el estatuto tiende a proteger.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 18 de septiembre de 1963, y se condenará al demandado a satisfacer al demandante la suma de $3,740 por concepto de indemnización,(8) más las costas, incluyendo las del presente recurso de revisión, sin incluir honorarios de abogado.(9)*

El Juez Presidente Señor Negrón Fernández disintió.

---

(8) El tribunal determinó que "Como consecuencia del accidente el demandante sufrió un fuerte golpe en el lado izquierdo de la cara que le causó la fractura de la maxilia [*sic*] en la parte inferior del ojo. Esta fractura está bien consolidada pero ha dejado una pequeña deformidad, aunque no existe defecto funcional alguno. Además, el demandante sufrió heridas pequeñas en los antebrazos y presentó una cicatriz mayor en el hombro izquierdo que no le ha dejado incapacidad de clase alguna. Como consecuencia del accidente y por haberse visto impedido de asistir a su trabajo perdió el mismo. Para esa fecha él tenía un salario semanal de $20.00 y estuvo sin trabajo por no sentirse en condiciones físicas de hacerlo por espacio de tres meses."

Concedemos $3,500 por las lesiones recibidas y $240 por beneficios económicos dejados de recibir.

(9) La demanda fue interpuesta bajo la teoría de agencia, y, por tanto, no fue temerario el demandado al oponerse a la misma, ya que la prueba revela que no existía la relación de patrono y empleado entre el demandado y quien conducía el vehículo al momento del accidente.