*991 TEXTO COMPLETO DE LA SENTENCIA
Nos solicita, Julio González Gerena, por sí y en representación de la sociedad legal de bienes gananciales compuesta con María Lozada García, así como el otro codemandado, Julio César González Lozada (“apelantes”), que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala de Humacao (“777”), mediante la cual ese foro declaró con lugar la demanda en daños y perjuicios presentada contra ellos por Jessica González Castro y su madre Zulma Castro Vellón (en adelante, “apeladas”). Sostienen, en síntesis, que erró el TPI en la apreciación de la prueba, en la admisión en evidencia de copia de documentos y al conceder compensaciones no reclamadas.
Por los fundamentos que exponemos a continuación, modificamos la sentencia apelada. Ajustamos las partidas por concepto de pérdida del vehículo y empleo.
El 26 de febrero de 2001 ocurrió un accidente de tránsito en la carretera 198, justo antes de entrar al pueblo de Humacao. Las persona envueltas fueron la apelada Jessica González Castro y el joven, menor de edad, Julio César González Lozada. A raíz de dicho evento, la primera presentó una demanda reclamando daños y perjuicios contra los apelantes. Se unió su señora madre, Zulma Castro Vellón. Todos los demandados fueron emplazados. Oportunamente contestaron. Negaron las alegaciones relevantes.
Luego de los trámites procesales de rigor, se celebró la vista de conferencia con antelación al juicio. Se aceptó el informe suscrito por los abogados de las partes. Finalmente, los días 9 y 10 de mayo de 2005, el TPI llevó a cabo la vista del caso en su fondo. El 30 de junio de 2005 dictó sentencia. Declaró con lugar la demanda presentada y sin lugar la reconvención de los apelantes. Condenó a estos últimos a satisfacer $75,000 a favor de la apelada Jessica González Castro por sus daños físicos así como sufrimientos y angustias mentales. Asimismo, al pago de $15,000 por la pérdida del auto Mitsubishi del 2000 de la codemandante González Castro, además de $8,000 por la pérdida de ingresos de ésta al no poder continuar trabajando como resultado de las lesiones sufridas y el período de recuperación. Por último, les impuso el pago de las costas del proceso, $1,500 por honorarios de abogado y los intereses legales a razón del 6.00% anual, a partir de la fecha de la sentencia.
Determinó que el lunes 26 de febrero de 2001, mientras la codemandante, Jessica González Castro, se disponía ir a su casa en el Barrio Candelera de Humacao, a eso de las 7:45 de la noche, fue impactado su auto por el que conducía el codemandado-apelante Julio César González que venía en dirección contraria. Como resultado, sufrió fractura en su tobillo izquierdo. Recibió atención médica en el Hospital Ryder. Luego, durante esa misma semana, tuvo que ser operada el jueves 1 de marzo próximo en el Hospital San Pablo del Este en Fajardo. La cirugía consistió en la fijación del hueso con dos tornillos o clavos, los cuales al momento de la vista aún tenía.
Después de dicha intervención comenzó el proceso de recuperación. Le tomó seis (6) meses. Tuvo que permanecer con un yeso por algunos cuatro (4) meses. Se sometió a unas veinte terapias por los próximos dos (2) meses. No pudo acudir al trabajo como cajera en la Tienda Pitusa donde ganaba $5.15 la hora por un período *992 semanal de trabajo entre veintiocho (28) a treinta (30) horas semanales. Se vio obligada a descontinuar sus estudios universitarios. El auto que manejaba resultó en pérdida total.
Inconforme con la decisión del TPI, los apelantes acuden ante nos. Le imputan la comisión de los siguientes errores:
“A. Erró el Tribunal de Instancia al imponer responsabilidad a quien nunca se hizo formar parte del presente caso.

B. Erró el Tribunal de Instancia al imponer responsabilidad a Julio González.

C. Erró el Honorable Tribunal de Instancia al cambiar la alegación de la parte apelada-demandante a los efectos que el auto que supuestamente le impacta está a nombre de otra persona, aunque existía una estipulación a esos efectos.

D. Erró el Honorable Tribunal de Instancia al imponer de forma solidaria y mancomunada a la parte apelante-demandada de la presente sentencia.

E. Erró el Honorable Tribunal de Instancia al conceder daños no reclamados en la presente demanda.

F. Erró el Honorable Tribunal de Instancia al conceder daños en exceso a los solicitados por la parte apelada-demandante.

G. Erró el Honorable Tribunal de Instancia al otorgar partida por honorarios de abogado.

H. Erró el Honorable Tribunal de Instancia al admitir como evidencia documentos en crasa violación de las Reglas de Evidencia y el debido proceso de ley. 1 '

I. Erró el Honorable Tribunal de Instancia crasa y manifiestamente en la apreciación de la prueba en el presente caso.

J. Erró el Honorable Tribunal de Instancia al declarar sin lugar la presente reconvención. ”

Es doctrina reiterada que la apreciación de la prueba realizada por los tribunales de instancia debe ser objeto de deferencia por los foros apelativos. Pueblo v. Torres Rivera, 137 D.P.R. 630, 640 (1994); Pueblo v. Falcón Negrón, 126 D.P.R. 75, 79-80 (1990). Corresponde al tribunal sentenciador aquilatar la testifical aportada y dirimir su credibilidad. Por lo tanto, sus determinaciones de hechos merecen gran respeto. Trinidad v. Chade, 153 D.P.R. 280, 291-292 (2001).
En cumplimiento, la norma de este Foro es no intervenir con esa apreciación de los foros de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Véase, e^, Pueblo v. Lorio Ormsby I, 137 D.P.R. 722, 730 (1994). La razón es obvia. Es el juzgador de los hechos quien observa el comportamiento de los testigos al momento de éstos testificar lo cual constituye un aspecto de vital al adjudicar credibilidad. Ante la ausencia de pasión, prejuicio y parcialidad por instancia, estamos vedados de intervenir con la apreciación de la prueba hecha por dicho foro.
Más aún, la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A., Ap. Ill, R. 43.2, dispone en lo aquí pertinente, que “[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos”. íd.
*993 De otra parte, la Regla 73 de las de Evidencia, 32 L.P.R.A. Ap. IV, establece que “[u]n duplicado es tan admisible como el original a no ser que surja una genuina controversia en torno a la autenticidad del original o que, bajo las circunstancias del caso, sea injusto admitir el duplicado en lugar del original”. La Regla 68(D) del aludido ordenamiento probatorio define lo que constituye un duplicado como “la copia o imagen producida por la misma impresión que el original o por la misma matriz o por medio de fotografía, incluyendo ampliaciones y miniaturas, o por grabaciones mecánicas o electrónicas o por reproducciones químicas o por otras técnicas equivalentes que reproduzcan adecuadamente el original. ”
Bajo la Regla 68(D), supra, un duplicado es tan bueno como el original. En ausencia de fraude, no hay diferencia entre ambos según definidos. Ernesto L. Chiesa Aponte, Tratado de Derecho Probatorio, Tomo II, República Dominicana, Publicaciones J.T.S., 1998, pág. 941.
Si no se presenta un planteamiento serio o genuino sobre la autenticidad del original, el tribunal carece de discreción para no admitir el duplicado, salvo que bajo las circunstancias del caso ello resulte injusto. E. L. Chiesa Aponte, ob. cit., pág. 941. Esta salvedad debe ser utilizada por las cortes en forma restrictiva. De lo contrario, se empalidece el efecto la importante Regla 73.
Por ende, un duplicado es tan admisible como el original mismo. Bajo la regla de la mejor evidencia, el original y los duplicados constituyen evidencia primaria (no secundaria) del contenido del escrito. E. L. Chiesa Aponte, supra, pág. 947. El proponente de un duplicado debe establecer, que lo que presenta es un duplicado bajo la Regla 68(D), supra. Además, sustentar que el original es lo que sostiene que es, en el sentido general de autenticación de la Regla 75. Véase, E. L. Chiesa Aponte, supra, pág. 947.
Es importante señalar que la regla de la mejor evidencia dispone que “[a] menos que un estatuto o estas reglas dispongan otra cosa, para probar el contenido de un escrito, grabación o fotografía se requiere la presentación del escrito, fotografía o grabación original. ” Regla 69 de las de Evidencia, 32 L.P.R.A. Ap. IV. Es imperativo, pues, analizarlas colectivamente, específicamente las 69, 70 y 73, para poder entender cuándo no será de aplicación lo referente a la mejor evidencia.
La Regla 70 dispone, inter alia, que “[sjerá admisible otra evidencia del contenido de un escrito, grabación o fotografía que no sea el original mismo cuando: (a) El original se ha extraviado o ha sido destruido a menos que el proponente lo ha perdido o destruido de mala fe.” Resulta evidente que cuando se pueda demostrar que no se tiene el original por alguna de las razones dispuestas, la regla de la mejor evidencia (Regla 69), no será de aplicación.
De otra parte, la Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, preceptúa que:

"En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta".

Asimismo, la 44.3 de ese mismo Cuerpo procesal civil ordena la imposición de intereses desde la “radicación” de la demanda cuando la parte demandada ha procedido con temeridad. Es mandatorio.
El concepto temeridad ha sido amplia y repetidamente definido. En términos generales se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones en balde persistiendo en el empeño. Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 334-335 (1998); Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994). Su propósito fundamental es establecer, como consecuencia, una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos obliga a la otra parte asumir las *994 molestias, gastos, trabajos e inconveniencias de un pleito. Fernández v. San Juan Cement Co., Inc 118 D.P.R. 713,718 (1987).
Aunque la imposición de honorarios de abogado es discrecional, la Regla es clara. Impone a una parte que ha procedido con temeridad el pago de una suma por ese concepto. Determinada la existencia de temeridad, la condena de honorarios es imperativa. Blás v. Hosp. Guadalupe, supra, pág. 334.
Dicha decisión no será revisada a menos que el foro sentenciador haya cometido un abuso de discreción. Le corresponde a la parte apelante demostrarlo. CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. 27, 44 (1996). Sabido es también, que la partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas 123 D.P.R. 339, 350 (1989).
De otra parte, la Ley 22 de 7 de enero de 2000, según enmendada, en sus Arts. 1 y 22.01, renumerados como 21.01 y 5621, (9 L.P.R.A. sees. 5001 y 5621 Suplemento 2005), establece lo siguiente:

“§ 5001. Dueño de un vehículo

Dueño de un vehículo. - Significará toda persona natural o jurídica que tenga inscrito a su nombre un vehículo o vehículo de motor en el Departamento.

§ 5621. Responsabilidad de dueños de vehículos de motor cuando medie culpa o negligencia.

El dueño de cualquier vehículo de motor sera responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por una tercera persona, obtenga su posesión mediante la autorización expresa o tacita del dueño. En todo cuso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo control un vehículo de motor ha obtenido su posesión con la autorización de su dueño, con elfin principal de operarlo, o de hacer o permitir que sea operado por una tercera persona.

La persona por cuya negligencia haya de responder el dueño de un vehículo, de acuerdo con las disposiciones de esta sección, vendrá obligada a indemnizar a éste.

Énfasis suplido.
El propósito legislativo fue "garantizar a cualquier persona la reparación de los daños causados mediante la operación culposa o negligente de un vehículo de motor, cuando la posesión del mismo fue entregada voluntariamente por su dueño." Véase, Cordero Santiago v. Lizardi Caballero, 89 D.P.R. 150, 158 (1963), al amparo de las mismas disposiciones incluidas en la Ley de Tránsito anterior. Constituye una de las excepciones principales al principio que rige la responsabilidad extracontractual en Puerto Rico. Fija responsabilidad al dueño de un vehículo de motor por los daños y perjuicios causados en la operación negligente o culposa de dicho vehículo, si el conductor del mismo obtuvo su posesión mediante la autorización del dueño. Nieves Vélez v. Bansander Leasing Corp., 136 D.P.R. 827, 834-835 (1994).
Esa autorización puede ser expresa o tácita. Cordero Santiago, supra. El estatuto señala expresamente que el mero hecho de que un tercero conduzca, opere o tenga bajo su dominio o control un vehículo de motor, establece una presunción de carácter controvertible a los efectos de que ha obtenido la posesión del vehículo *995 con la autorización de su dueño. El hecho determinante es la posesión autorizada y no el uso autorizado del vehículo. Bansander Leasing, supra. Por eso, "la conducción por un tercero autorizado por la persona a quien se confió el vehículo, equivale a la posesión autorizada de éste." McGee Quiñones v. Palmer, 91 D.P.R. 464, 469 (1964).
La Sección 5621, supra, debe ser interpretada liberalmente a favor de la responsabilidad que ella impone. Bansander Leasing, supra, pág. 835; González v. Seatrain Lines of P.R., 106 D.P.R. 494, 500 (1977); Vargas Vargas v. Belthor Cáceres Corp., 90 D.P.R. 37, 46 (1964). Ello, sin embargo, no significa que el tribunal está obligado a determinar responsabilidad del dueño. Después de todo, estamos ante una presunción controvertible. Por ende, no responde si la prueba que presente la derrota.
En cuanto a los daños se refiere, la gestión judicial de su estimación y valoración es una difícil y angustiosa. No existe un sistema mecánico que le permita al TPI llegar a un resultado exacto con el cual todas las partes queden satisfechas y complacidas. Véase, Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975). En relación con esta difícil y angustiosa labor, los tribunales de instancia, de ordinario, están en una mejor posición que los apelativos para evaluarlos. Tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Véase, e.g., Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Este tribunal apelativo no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Véase, e. g., Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182 (1985).
Expuesto el trasfondo doctrinario, analizamos la controversia que ocupa nuestra atención. Discutimos en conjunto los errores que tengan un tronco común y por separado los otros.
Es la contención de los apelantes que erró el TPI al imponer responsabilidad a quien nunca se hizo formar parte del caso. Alegan que se la impuso a la Sra. María Lozada García, madre del menor y esposa del codemandado-apelante, Julio González Gerena, sin asumir jurisdicción sobre ésta.
Proyectan una visión errada de la determinación del tribunal. Del análisis de la demanda, la contestación y reconvención, en conjunto con la sentencia, se desprende que la Sra. Lozada García nunca fue parte en el pleito. Del título de la demanda podemos colegir que los demandados son el Sr. Julio González por sí y en representación de la “Sociedad Legal de Gananciales” y Julio Cesar González Lozada. A su vez fue contestada por estas mismas personas, entiéndase Julio González Lozada, por conducto de su madre y el Sr. Julio González por sí y en representación de la sociedad legal de gananciales.
En la reconvención, las únicas personas que reclaman daños lo son Julio Cesar González Lozada (el hijo menor) y Julio González (el padre). La mención de la Sra. Lozada en la sentencia se produce en una determinación de hechos. La citamos textualmente:
“El codemandado y reconveniente Julio César González Lozada al momento de su declaración en Corte dijo contar con 20 años de edad y estudiante universitario en la Universidad Interamericana de segundo año en la facultad de administración de empresas y soltero. Su madre, la codemandada Maria Lozada García, al momento de su declaración en Corte dijo contar con 48 años de edad y residente en la urbanización Las Leandras de Humacao hacían 25 años y empleada hacían 7 años de una empresa farmacéutica y con estudios hasta el cuarto año de escuela superior. Fue la esposa del codemandado Julio González Gerena, quien al momento del accidente se encontraban separados y pensionado por incapacidad por el seguro social. ”
Énfasis suplido. Sentencia, apéndice del recurso, pág. 5.
*996 Por esa expresión aislada, no podemos concluir que el TPI resolvió que la Sra. Lozada García era parte en el pleito. Mucho menos que le impuso responsabilidad.
En cuanto a que erró el TPI al adjudicar responsabilidad a Julio González Gerena (padre), sostienen que éste nunca fue parte en el pleito ni se formuló alegación en su contra. Se basan en que el emplazamiento se diligenció a nombre de Julio González, no de Julio González Gerena. Es preciso señalar que en este caso tenemos a dos personas con el mismo nombre y primer apellido. Por un lado está el menor Julio González Lozada y por el otro su padre, Julio González (Gerena). Un examen del expediente revela que a través de todo el proceso surgió confusión en cuanto a los nombres.
Como antes mencionamos, en la demanda se identifican como demandados a Julio González por sí y en representación de la Sociedad Legal de Gananciales y a Julio Cesar González Lozada (el menor). Los emplazamientos se expidieron a nombre de Julio González Lozada quien fue emplazado a través de su madre por ser menor de edad, y de Julio González por sí y en representación de la sociedad legal de gananciales. Al diligenciarse, el emplazador notificó personalmente a Julio González Gerena. Completó el diligenciamiento con los dos apellidos de ese demandado.
El propio abogado de los demandados se equivocó al contestar la demanda. Compareció en representación de Julio González Lozada y de Julio González Lozada por sí y en representación de la Sociedad Legal de Gananciales. No obstante, en la reconvención reclama daños a favor de Julio González Lozada y de Julio González. Se desprende, además, que el menor compareció por conducto de su madre la Sra. Maria Lozada García y que su padre compareció por sí y en representación de la sociedad legal de gananciales.
El menor no podía representar a la sociedad legal de gananciales de sus padres. De otro modo estaría compareciendo dos veces, una como menor representado por su madre y otra por sí y en representación de la sociedad de gananciales compuesta por él y su madre lo que constituye un absurdo.. Resulta evidente que se trata de errores tipográficos y de confusiones debido a que tanto el padre como el hijo tienen el mismo nombre y primer apellido.
Por los mismos fundamentos, tampoco les asiste la razón a los apelantes en cuanto al error “C”. Es su contención de que incidió el TPI al suplantar la alegación de la parte apelada a los efectos que el auto estaba a nombre de Julio González Gerena cuando estipularon que estaba a nombre de Julio González Lozada.
Si bien es cierto que alegó en su demanda y estipuló en el informe sobre conferencia preliminar entre abogados que el vehículo en cuestión estaba registrado en el Departamento de Transportación y Obras Públicas ( DTOP ) a nombre de Julio González Lozada, se trató de un evidente error por inadvertencia sin consecuencias. Sabido es que un menor de quince (15) años no puede aparecer en el Registro del DTOP como titular de un vehículo. Es imposible que haya podido registrarlo a su nombre.
La transcripción de evidencia es ilustrativa. Refleja que el titular del vehículo lo era el Sr. González Gerena. A esos efectos, citamos lo que surge de la declaración de la esposa del codemandado, Julio González Gerena, pág. 483, transcripción de evidencia:

‘P- Ese vehículo, ¿a quién pertenecía?

R. A Julio C. González Gerena, o sea, él es el dueño, pero pertenecía a mí porque en mi casa habían dos carros y cuando nos separamos, él se quedó con otro.

P. Pero para todos los fines pertenecía a los dos.

*997
R. Okay, unjú. ”

No hay duda que lo que quisieron representar las partes en la estipulación fue que el carro estaba a nombre de Julio Cesar González Gerena (padre). Carecemos de margen para resolver lo contrario. Actuó correctamente el TPI.
En cuanto al error tampoco nos convencen. Alegan que erró el TPI al imponerle responsabilidad solidaria a la parte apelante. De una lectura de las disposiciones de la Ley de Transito citadas, se desprende que el dueño de un vehículo de motor es responsable de los daños y perjuicios causados por la operación negligente o culposa de dicho vehículo. Constituye una de las excepciones al principio que rige la responsabilidad extracontractual en Puerto Rico de que uno responde por los actos negligentes o culposos propios, no por lo ajenos. La posesión del vehículo tiene que haberse obtenido mediante la autorización del dueño. Dicha autorización puede ser expresa o tácita.
El dueño del vehículo lo era el Sr. González Gerena, titular del mismo en el DTOP. A su vez, Julio González Lozada (hijo) lo conducía al momento del accidente. Ese mero hecho estableció una presunción a los efectos de que obtuvo su posesión con la autorización de su dueño. La prueba desfilada no la derrotó por lo que el Sr. González Gerena, como titular, es responsable solidariamente de los daños que ocasionó la negligencia del conductor Julio González Lozada.
Discutiremos en conjunto los errores “E” y “F”. Es la postura de los apelantes que incidió el TPI al imponerles daños no reclamados en la demanda por la apelada. También al concederlos en exceso a lo solicitado. No tienen razón en lo primero; la tienen en lo segundo.
Se condenó a los apelantes al pago de: $75,000 por los danos físicos, sufrimientos y angustias mentales y morales sufridos por la codemandante-apelada, Jessica Gonzalez Castro; $15,000 por la pérdida del auto y $8,000 por la de ingresos. En cuanto a la partida de $75,000 concedida, se desprende que reclamó en la demanda $20,000 por traumas y daños físicos; $100,000 por pérdida de funciones fisiológicas; y $25,000 por angustias mentales. Sumadas ascienden a $145,000.
Luego de analizada la prueba testifical y documental, el TPI determinó que le correspondían $75,000. Lejos de haberse excedido en la apreciación de los daños físicos y emocionales de la demandante, entendió que era la suma que valoraba sus daños. Estos incluyen un fuerte dolor en su pierna izquierda, antes y después de su operación; incapacidad y pérdida parcial de su habilidad para caminar por al menos seis meses, cuatro meses enyesada; dos tomando terapias además de las angustias mentales. Este tribunal no intervendrá con esa determinación. Ciertamente, la cuantía concedida no es ridiculamente baja ni exageradamente alta. Actuó correctamente el TPI.
No obstante, en cuanto a las partidas reclamadas por el vehículo y pérdida de ingresos, resolvemos que erró. De la demanda se desprende que dicha codemandante reclamó $6,000 por la pérdida del auto y $4,000 por la de ingresos. La transcripción de su declaración acredita lo siguiente:

“Aquí a lo mejor estamos perdiendo de vista lo siguiente, que con relación al carro la única alegación de acuerdo a la demanda es: “La demandante Zulma Castro Vellón sufrió daños ascendentes a $6,000 por la pérdida de su vehículo. El vehículo resultó en pérdida total como resultado del accidente.

“P. Digo, lo que está pidiendo ahí usted, $6,000 nada más.

R. Seis mil porque lo demás el seguro lo da y así mismo hay que dárselo al banco. [...]’’

*0 [[Image here]]
[[Image here]]
[[Image here]]
[[Image here]]
*998 Transcripción, Pág. 215.
No obstante, el TPI le concedió $15,000 por la pérdida del auto. Erró al así resolver. La demanda y la prueba aportada durante la vista del caso no sustentan esa cantidad.
De igual manera, por los mismos fundamentos rebajamos la cuantía de $8,000 concedida por la pérdida de ingresos. En la demanda, la apelada reclamó $4,000 por ese concepto. Su testimonio no acredita la cantidad concedida según ella declaró. Reproducimos el segmento correspondiente de la transcripción.

“P. ¿Estuvo fuera seis meses?

R. Anjá.

[...]

P. Usted dice que estuvo cuatro meses con el yeso.

R. Unjú.

P. A los cuatro meses, ¿quépasó, le quitaron el yeso?

R. Me quitaron el yeso y me indicaron para coger terapia, porque yo tengo tornillos en la pierna.

Transcripción, págs. 93-95

[■■■]

P. Mire, ¿y cuánto tiempo tomó eso de las terapias?

R. Como dos meses.

P. Como dos meses. ¿Cuánto usted ganaba en Hypermercados Pitusa?

[...]

R. A $5.15.

P. A $5.15. ¿Y cuantas horas promedio trabajaba a la semana? [...]

R. Veintiocho a treinta. ”

Transcripción, pág. 108.
Al momento del accidente, la apelada trabajaba en Hypermercados Pitusa. Cubría aproximadamente de veintiocho (28) a treinta (30) horas semanales con un salario de $5.15 la hora. Como consecuencia del accidente, no pudo laborar por espacio de seis (6) meses. Se vio privada de su salario durante dicho período. Redondeando a treinta horas la jornada de trabajo semanal a razón de $5.15 la hora por seis (6) meses o sea, veintiséis (26) semanas, su pérdida de ingresos asciende, también redondeada, a $4,000. Dicha suma se obtiene multiplicando el salario diario por hora por el número de horas trabajadas en la semana y a su vez por el número de semanas que estuvo fuera del trabajo. El producto los acredita. El propio abogado de la demandante en su *999 alegato en oposición a la apelación acepta que erró el TPI al conceder dicha cantidad y que la misma debe ser ajustada. Procede que se rebaje a $4,000.
En cuanto al error imputado bajo la letra (G), es la contención de los apelantes que incidió el TPI al otorgar honorarios de abogado. Sostienen que no incurrieron en temeridad.
Luego de analizar toda la prueba, tanto testifical como documental, el TPI determinó que el testigo de la parte apelante, Rafael Velázquez Areizaga, ofreció una versión fundamentada con prueba incorrecta y/o cuando menos, sobre unas afirmaciones falsas. Sentencia, apéndice del recurso, pág. 4, nota al calce número 10. Del mismo modo, el resto de la prueba ofrecida por los apelantes mediante los testimonios de la madre del menor Julio González Lozada y el Sr. Luis Cintrón revelan contradicciones insalvables al ser comparadas con la documental.
En cuanto al último, no le mereció credibilidad al TPI. Prestó una declaración jurada afirmando que quien manejaba el auto era el menor Julio González Lozada. Luego, en el juicio, se contradijo. Sostuvo que quien lo conducía era Rafael Velázquez Areizaga. Véase transcripción, págs. 399-401.
Así también, y como se desprende de la contestación a interrogatorio número 17 servido a los apelantes con respecto al hecho sobre quién acompañaba al chofer del auto cuando ocurrió el accidente, la madre del menor contestó: “Rafael Velázquez Areizaga”. No es hasta que se le pregunta más adelante sobre la licencia de conducir de su hijo que ésta expresa que él no era el conductor.
Durante la vista del caso se suscito lo siguiente:

“[...] La pregunta 16 le pregunta quiénes tienen conocimiento del accidente. La 17: “Relacione los nombres y direcciones de todas las personas que acompañaban al chofer en el vehículo envuelto en el accidente al momento de ocurrir el mismo, expresando además lo siguiente: nombre, dirección y teléfono”. [...]

Y la contestación, ¿qué ella contesta?

Contesta: “Rafael C. Velázquez, Calle 13 D-25, Urbanización Las Leandras, Humacao, Puerto Rico”. Esa es la contestación, mírela, examínela, la 17.

Dígame si esa es su firma, esa que aparece ahí en la contestación.

Si, es mi firma.

[...]

En otras palabras, que por qué usted ahí no contestó Julio C.

Okay. Yo entendí que era el chofer.

[...]

¿Lo contestó a lo loco?

Podría ser.

*1000
[-]

Mire, si usted contesta con la precisión de que era Rafael el que acompañaba al conductor y dice hasta la dirección. Esa no es la dirección suya. Si se hubiera equivocado, ¿se hubiera equivocado también en la dirección?

Verdaderamente, me equivoqué en la...

Se equivocó en la pregunta. Mire a ver si más adelante usted dice que el chofer era su hijo, distinto a lo que está diciendo ahí, con una pequeña diferencia, que las letras de la maquinilla son distintas a casi todas las preguntas. [...]

[...]

Y es cuando se le pregunta, señora, ¿dónde está la licencia de su hijo y ahí es que usted dice: Ah, mi hijo transitaba como pasajero, no como chofer. ”
Transcripción, págs. 490-495.
Un análisis del expediente, particularmente de la sentencia y la reproducción de la prueba refleja que los apelantes han demostrado un patrón de conducta caracterizado por la insistencia con actitudes desprovistas de fundamentos. Interpusieron una reclamación frívola al presentar una reconvención basándose en testimonios falsos. Con su conducta prolongaron injustificadamente el pleito obligando así a que la apelada incurriese en gastos innecesarios. Rebasaron el modelo ordinario que en materia de litigación se considera permisible. De ahí la imposición de temeridad. Actuó correctamente el TPI al imponerle el pago de honorarios de abogado.
Por el error “IE\ señalan que incidió al admitir como evidencia documentos en crasa violación de las reglas de evidencia. Se limitan en la discusión a citar las Reglas 69(A) y 75 de las de Evidencia, supra, las cuales constituyen la norma general. Nada expresan sobre las 68(D), 70 y 73 que contemplan la excepción.
Si bien es cierto que la mejor prueba de un escrito o una fotografía lo es el original, no es menos cierto que hay una serie de circunstancias en que una copia o duplicado es admisible para probar el contenido del escrito o fotografía original. Una de estas precisamente es cuando el original se ha perdido o extraviado y no existe mala fe.
Recordemos que, a tenor de la Regla 73, supra, un tribunal no puede negarse a admitir un duplicado por el mero hecho de que no sea el original. A menos que quien objeta la admisión del duplicado no presente un argumento serio o genuino sobre la autenticidad del original, carece de discreción para rechazarlo, a no ser que bajo las circunstancias del caso ello resulte injusto. Para que aplique la excepción, el proponente de la evidencia debe establecer que el original existía, pero que se ha perdido y luego de una búsqueda razonable no dio con su paradero, ya sea porque se extravió o porque el mismo ha sido destruido.
La representación legal de la apelada tuvo que someter toda su prueba documental en la vista del caso a través de la autenticación. Expücó que la razón por la cual se estaban presentando copias era porque los originales se extraviaron y no se pudieron encontrar a pesar de las gestiones realizadas. Véase, transcripción, págs. 124-136. Resulta evidente que la pérdida de todos los documentos y fotografías originales que constituian la prueba documental no fue el producto de la mala fe.
Ante ausencia de evidencia que permita concluir que las copias ofrecidas por la parte demandante fueron objeto de fraude, o no reproducen con exactitud el contenido de las originales, el TPI carecía de autoridad para *1001 no aceptarlas. Amerita agregar que en este caso la admisión del duplicado tampoco opera como una injusticia. Dentro del significado particular de las Reglas de Evidencia, las copias ofrecidas por la parte demandante cualifican como duplicados. Actuó correctamente el TPI al admitirlas.
En cuanto a los señalamientos de errores “F y “7”, ambos atacan la apreciación de la prueba a que sometió el TPI la aportada. Tampoco nos persuaden los apelantes. A base de la testifical y documental admitida arribó a una serie de determinaciones de hechos. Concluyó que el 26 de febrero de 2001, mientras la joven Jessica González Castro se disponía ir a su casa a eso de las 7:45 p.m., su auto fue impactado de forma culposa y negligente por el conducido por el codemandado Julio González Lozada, quien discurría en dirección contraria a mayor velocidad. Véase, transcripción de evidencia, págs. 26 a 41.
El referido accidente ocurrió ese día y a esa hora cuando la joven transitaba por la carretera 1698 para doblar a la izquierda en la intersección con el expreso número 30. Resultó con una fractura en su tobillo izquierdo. Recibió atención médica en el Hospital Ryder. Durante esa misma semana fue operada para fijarle el hueso con dos tornillos o clavos, los cuales al momento de la vista aún tenía. Transcripción, págs. 247-249.
Luego de analizar el expediente y la transcripción de la prueba, estamos convencidos de que las determinaciones de hechos formuladas por el TPI están sostenidas por la prueba que desfiló. No existen indicios de que su decisión se deba a pasión, prejuicio o parcialidad. Bajo tales circunstancias, no procede alterarlas en apelación.
A la luz de la normativa esbozada y de las circunstancias del caso, tenemos que concluir que es menester no intervenir con las determinaciones de hechos, la apreciación de la prueba y la adjudicación de credibilidad del testimonio de los testigos efectuadas por el juzgador.
Sin variar la adjudicación de credibilidad realizada, sino por el contrario, a base de ella, concluimos que actuó correctamente al declarar con lugar la demanda presentada y condenar a los apelantes al pago de $75,000 a favor de la apelada por los daños físicos, angustias mentales y morales que sufrió como resultado.
Por lo hasta aquí dicho, modificamos la sentencia apelada a los fines de reducir a $4,000 y $6,000 las partidas de pérdida de auto y de ingresos respectivamente. Igualmente, disponer que los intereses se computarán a partir de la fecha de la presentación de la demanda. Así modificada, la confirmamos en cuanto al resto.
Lo acuerda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 43
1. De los autos con que contamos no surge la razón para que el TPI omitiera en su sentencia lo relacionado con la reclamación de la codemandante, Zulma Castro Vellón, madre de Jessica.
2. “El requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficientes para sostener una determinación de que la materia en cuestión es lo que el proponente sostiene.” Id.